1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| TRICIA OGDEN, individually and on behalf of all others similarly situated, | ) ) ) Case No.: C 12-1828 LHK |
| Plaintiff, | ) **ORDER GRANTING-IN-PART** |
| v. | ) **PLAINTIFF'S MOTION TO COMPEL** |
| BUMBLE BEE FOODS, LLC, | ) **(Re: Docket No. 33)** |
| Defendant. | ) ) ) |

Plaintiff Tricia Ogden ("Ogden") moves to compel Defendant Bumble Bee Foods, LLC ("Bumble Bee") to provide more complete responses to her interrogatories, requests for admissions, and requests for production.  Having considered the parties' papers and arguments, the court GRANTS-IN-PART Ogden's motion.

The parties are familiar with the facts of the case and of this particular dispute, and so the court provides only a brief summary of the background before setting forth its reasoning.  Ogden is pursuing a putative class action against Bumble Bee and seeks to represent a nationwide class of purchasers of Bumble Bee products falling within one of four categories:

(1)     labeled or advertised as "Rich in Natural Omega-3" or "Excellent Source Omega-3";

1

Case No.: C 12-1828 LHK
ORDER

United States District Court
For the Northern District of California

(2)     labeled or advertised with a nutrient content claim for a nutrient lacking a Daily Value or lacking the minimum Daily Value ("DV") specified for the type of claim made;

(3)     labeled or advertised with a nutrient or health claim despite containing a disqualifying nutrient level precluding the claim; or

(4)     labeled or advertised with an unauthorized health or drug claim.[1]

Ogden limits the class to members who purchased the various products within the last four years.[2] Ogden alleges she herself purchased only King Oscar's Sardines Mediterranean Style ("Sardines") and Tuna Salad with Crackers ("Tuna Salad").[3]  Bumble Bee distributes King Oscar's products in the United States, but the companies purportedly are separate entities.[4]

Ogden served Bumble Bee with numerous requests for production, requests for admission, and interrogatories.  Bumble Bee objected to the requests on several grounds, but the parties agree that this dispute centers around three issues: (1) whether Bumble Bee must produce discovery on all of its products; (2) whether it must produce discovery from eight years prior to the initiation of this lawsuit; and (3) whether it must respond to discovery regarding King Oscar.[5]

## I.      LEGAL STANDARDS

"Prior to class certification under Rule 23, discovery lies entirely within the discretion of the [c]ourt."[6]  In its exercise of that discretion, the court may require the plaintiff "to either make a prima facie showing that the Rule 23 class action requirements are satisfied, or to show 'that

---

[1] *See* Docket No. 14.

[2] *See id.*

[3] *See id.* ¶ 122.

[4] *See* Docket No. 39.

[5] *See* Docket Nos. 33, 39.

[6] *Willner v. Manpower, Inc.*, Case No. C 11-2846 JSW (MEJ), 2012 WL 4902994, at *2 (N.D. Cal. Oct. 16, 2012) (citing *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 942 (9th Cir. 2009)).

2

Case No.: C 12-1828 LHK
ORDER

discovery is likely to produce substantiation of the class allegations.'"[7]  Class certification often requires discovery "where it will resolve factual issues necessary for the determination of whether the action may be maintained as a class action,"[8] and so courts should allow "enough discovery to obtain the material, especially when the information is within the sole possession of the defendant."[9]  "[T]he need for discovery, the time required, and the probability of discovery providing necessary factual information" are also relevant to the exercise of the court's discretion in allowing or prohibiting discovery.[10]

To make a prima facie showing for class certification, plaintiffs first must show that they have met the four factors of Fed. R. Civ. P. 23(a): (1) that "the class is so numerous that joinder of all members is impracticable"; (2) that "there are questions of law or fact common to the class"; (3) that "the claims or defenses of the representative parties are typical of the claims or defenses of the class"; and (4) that "the representative parties will fairly and adequately protect the interests of the class."[11]  Plaintiffs must also show that they have made a prima facie showing for one of the Rule 23(b) categories.[12]

Fed. R. Civ. P. 26(b) provides that parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense."  The relevant information

---

[7] *Id.* (quoting *Mantolete v. Bolger*, 767 F.2d 1416, 1424 (9th Cir. 1985)).

[8] *Id.* (citing *Kamm v. Cal. City Dev. Co.*, 509 F.2d 205, 210 (9th Cir. 1975)).

[9] *Doninger v. Pac. Nw. Bell, Inc.* 564 F.2d 1304, 1313 (9th Cir. 1975).

[10] *Id.*

[11] *See Willner*, 2012 WL 4902994, at *2.

[12] *See Lewis v. First American Title Ins. Co.,* Case No. 06-478-S-EJL-LMB, 2008 WL 2266351, at *2 (D. Idaho June 2, 2008).  Some courts have applied the prima facie standard only to the Rule 23(a) factors.  *See, e.g., Soto v. Castlerock Farming & Transport, Inc.*, 282 F.R.D. 492, 499 (E.D. Cal. 2012); *Wilner*, 2012 WL 4902994, at *2.  But nothing in *Doninger*, in which the Ninth Circuit first articulated the standard, indicates that the analysis ends at the first step.  In *Doninger*, the Ninth Circuit stopped after consideration of the Rule 23(a) factors because the court found the plaintiff had not made a prima facie case even at that threshold step.  *See* 564 F.2d at 1313.

Case No.: C 12-1828 LHK
ORDER

1   "need not be admissible at trial if the discovery appears reasonably calculated to lead to the

2   discovery of admissible evidence."  Relevance under Rule 26(b) is broadly defined, "although it is

3   not without ultimate and necessary boundaries."[13]

## II.    DISCUSSION

### A.    Discovery of All of Bumble Bee's Products

The parties frame their dispute around whether Ogden has standing to pursue claims for

Bumble Bee products that she did not purchase.  Bumble Bee argues that because Ogden purchased

only the Sardines and the Tuna Salad, she has no standing for claims regarding its other products,

and so information about those other products is irrelevant to her claims.  In response, Ogden

points to the "sufficient similarity" test that several courts in this district recently have employed to

determine whether named plaintiffs have standing to pursue claims for items they did not purchase.

Courts grapple with whether this type of dispute is really one of standing or more properly

one of typicality and adequacy of representation in the class certification phase with some court

precedents lending support to both views.[14]  On the one hand, courts have held that named

plaintiffs must have standing for each of the claims that they bring on behalf of the class, which

would suggest that Ogden must have purchased each of the products she here alleges violate

California law.[15]  On the other hand, other courts have observed that standing is merely the key that

---

[13] *See Gonzales v. Google Inc.*, 234 F.R.D. 674, 680 (N.D. Cal. 2006) (internal citations and quotations omitted).

[14] *See, e.g., Gratz v. Bollinger*, 539 U.S. 244, 263 n.15 (2003) (noting "tension" in case law about whether the inquiry about plaintiff's injury in relation to putative class members' injuries is an issue of standing or adequacy); 1 Newberg on Class Actions § 2:1 (5th ed.) ("The rules for standing in class suits are thus easily described and understandably distinguishable from the requirements for class certification.  Nonetheless, courts occasionally confuse and conflate these district concerns, particularly in situations in which the class representatives seek relief for class members whose claims or desired remedied are somewhat distinct from their own.").

[15] *See, e.g., Blum v. Yaretsky*, 457 U.S. 991, 1001 (1982) ("It is not enough that the conduct of which the plaintiff complains will injure *someone*.  The complaining party must also show that he is within the class of persons who will be concretely affected.  Nor does a plaintiff who has been

4

Case No.: C 12-1828 LHK
ORDER

1    opens the door to litigation and class certification serves as the gatekeeper to determine which

2    claims may cross the threshold.[16]   Under this latter interpretation, Ogden's standing to bring claims

3    for the products she purchased is sufficient to establish standing as a class representative, and an

4    evaluation of whether she also may represent purchasers of products she did not buy should be left

5    to the class certification determination.   A virtue of this latter interpretation is that it avoids

6    unnecessary constitutional interpretation as is required by constant consideration of the standing

7    doctrine.[17]

8         Having reviewed the case law on standing generally in the class action context and in this

9    particular type of labeling-based claim setting,[18] the court is persuaded that the question the parties

10   raise is more properly analyzed in the context of class certification.   Extending "standing" to

11   "sufficiently similar" injuries seems to undermine the constitutional requirement that plaintiffs

12   suffer an "injury-in-fact."[19]   If plaintiffs have standing to bring claims for "sufficiently similar"

13   injuries, it would seem that they would not be precluded from continuing an action on those

---

subject to injurious conduct of one kind possess by virtue of that injury the necessary stake in litigating conduct of another kind, although similar, to which he has not been subject."); *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 978 (9th Cir. 2011) ("Plaintiffs must show standing with respect to each form of relief sought.").

[16] *See, e.g.*, *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 149 (1982) (noting plaintiff who was hired but not promoted was not an adequate representative for class of people who had not been hired for discriminatory reasons); *Sosna v. Iowa*, 419 U.S. 393, 403 (1975) (noting that even if plaintiff established standing, that "conclusion does not automatically establish that [she] is entitled to litigate the interests of the class she seeks to represent, but it does shift the focus of examination from the elements of justiciability to the ability of the named representative to fairly and adequately protect the interests of the class.").

[17] *See Slack v. McDaniel*, 529 U.S. 473, 485 (2000) (noting that courts should not "pass upon a constitutional question although properly presented by the record, if there is also present some other ground upon which the case may be disposed of") (quoting *Ashwander v. TVA*, 297 U.S. 288, 347 (1934)); *see also* 1 Newberg on Class Actions § 2:6 (endorsing this approach).

[18] *See, e.g.*, *Colucci v. ZonePerfect Nutrition Co.*, Case No. 12-2907-SC, 2012 WL 6737800, at *4 (N.D. Cal. Dec. 28, 2012); *Astiana v. Dreyer's Grand Ice Cream, Inc.*, Case No. C-11-2910 EMC, 2012 WL 2990766, at *11 (N.D. Cal. July 20, 2012); *Larsen v. Trader Joe's Co.*, Case No. C 11-05188 SI, 2012 WL 5458396, at *4-*5 (N.D. Cal. June 14, 2012); *Koh v. S.C. Johnson & Son, Inc.*, Case No. 09-00927 RMW, 2010 WL 94265, at *3 (N.D. Cal. Jan. 6, 2010).

[19] *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

Case No.: C 12-1828 LHK
ORDER

*United States District Court*
For the Northern District of California

"sufficiently similar" claims even if claims based on their own injuries were mooted.  That result contradicts the doctrine that named plaintiffs must have individual standing to bring a claim and cannot rely on the standing of the class members.[20]  To avoid that result courts would have to categorize the "sufficiently similar" injuries as derivative of the injuries of the representative, which essentially becomes indistinguishable from the analysis the court finds persuasive: that named plaintiffs must show only individual standing for their own claims and courts should then determine whether they may represent similar but not identical injuries by putative class members.

This court undertakes this brief foray into class action procedure not because it must decide whether Ogden has standing or if she is a typical or adequate representative.  Its role is only to determine the limits of Ogden's entitlement to discovery and Bumble Bee's corresponding obligation.  But class action discovery can be an expensive and burdensome process and so consideration of the boundaries of Ogden's claim is necessary to evaluate the appropriateness of her requests.[21]  The Ninth Circuit's direction that the court may require a prima facie showing for class certification before approving class discovery underscores that premise.[22]

In sum, at this stage of the case and in order to secure the discovery she requests, Ogden must show not only that she has standing to bring her own claims as a threshold matter, but then she must show numerosity, commonality, typicality, and that she is an adequate representative of the full class to justify the requested discovery.[23]

---

[20] *See Lewis v. Casey*, 518 U.S. 343, 357 (1996) ("That a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.").

[21] *See* Manual for Complex Litigation § 11.41 ("Fundamental to controlling discovery is directing it at the material issues in controversy.").

[22] *See Mantolete*, 767 F.2d at 1424.

[23] *See* Fed. R. Civ. P. 23(a); *Willner*, 2012 WL 4902994, at *2.

6

Case No.: C 12-1828 LHK
ORDER

### 1.   Prima Facie Showing

At the outset, the court finds that Ogden's purchase of the Tuna Salad and the Sardines and her allegation that she paid more than she would have for the products satisfies her obligation at this point to show standing.[24]

#### a.   Rule 23(a)

Ogden satisfies the numerosity element because she alleges that purchasers of Bumble Bee's products number in the thousands.[25] "Courts have routinely found the numerosity requirement satisfied when the class comprises 40 or more members."[26] Ogden's allegations thus suffice for the numerosity element.

Ogden alleges that questions regarding Bumble Bee's labeling practices and whether those practices amount to misbranding are common to the class.[27] Rule 23(a)(2) requires that there must be "questions of law or fact common to the class," such that a "common contention" exists that is of "such a nature that it is capable of classwide resolution."[28] Resolution of whether Bumble Bee's branding and labeling violated California law satisfies the requirement for a prima facie showing of commonality as required under Rule 23(a)(2).

As to her adequacy as a representative, Ogden alleges that she has no conflicts with the potential class members and that she will vigorously pursue the claims.[29] Her atypicality, as described below, could give rise to conflicts with other members,[30] but nothing in either the

---

[24] Bumble Bee has not challenged Ogden's standing for those products.

[25] *See* Docket No. 14 ¶ 136.

[26] *Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 1114, 1121 (E.D. Cal. 2009).

[27] *See id.* ¶ 137.

[28] *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).

[29] *See* Docket No. 14 ¶ 139.

7

Case No.: C 12-1828 LHK
ORDER

United States District Court
For the Northern District of California

1    complaint or the papers before the court suggests that Ogden is in any other way an inadequate

2    representative.

3         As noted, where Ogden runs into problems is with respect to typicality.  For the typicality

4    prong, Ogden claims that she is a typical representative because she "bought [Bumble Bee's]

5    Misbranded Food Products during the Class Period."[31]  To show typicality, Ogden must that her

6    claims are "reasonably co-extensive with those of absent class members; they need not be

7    substantially identical."[32]  "The test of typicality is whether other members have the same or

8    similar injury, whether the action is based on conduct which is not unique to the named plaintiffs,

9    and whether other class members have been injured by the same course of conduct."[33]

10

11        In her complaint, Ogden defines "Misbranded Food Products" as "products manufactured

12   or distributed by Bumble Bee labeled or advertised as 'Rich in Natural Omega-3' or 'Excellent

13   Source Omega-3'; 2) labeled or advertised with a nutrient content claim for a nutrient lacking a

14   Daily Value or lacking the minimum Daily Value . . . specified for the type of claim made; 3)

15   labeled or advertised with a nutrient or health claim despite containing a disqualifying nutrient

16   level precluding the claim; or 4) labeled or advertised with an unauthorized health or drug claim . .

17   . within the last four years."[34]

18

19        Ogden does not allege that she purchased all of Bumble Bee's products or even that she

20   purchased all of the mislabeled products.[35]  She alleges only that she bought the Tuna Salad and

21

22

_____

[30] *See, e.g., Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996) (noting that
when plaintiffs' claims are atypical, they may not be adequate representatives)

[31] *See* Docket No. 14 ¶ 138.

[32] *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

[33] *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).

[34] *See* Docket No. 14 at 1-2.

[35] *See id.* ¶ 122 (listing Sardines and Tuna Salad as purchased products).

8

Case No.: C 12-1828 LHK
ORDER

the Sardines.[36]  Those products may fall within the class she has defined but so do many other products that she did not purchase and that other potential class members purchased.[37]  At first blush it would appear that Ogden has not alleged that she in fact is "typical" of the class she is defined.

　　　　But as several courts have noted and as this court described above, she may be able to bring claims for class members who purchased food products "sufficiently similar" to the products she in fact bought.[38]  The court now considers the parties' arguments regarding whether Ogden meets the "sufficiently similar" in her allegations to determine whether and to what extent she has made a prima facie showing of typicality.

　　　　In context of motions to dismiss or to certify classes, courts have used the "sufficiently similar" standard to determine whether named plaintiffs have standing to assert claims for products they did not purchase,[39] but not all courts have adopted it.[40]  Courts employing the "sufficient similarity" test have found that in situations in which reliance is alleged on a nearly identical claim on labels for different products[41] or where the products themselves are essentially identical,[42] the named representative's injury essentially merges with those other claims.  Although other courts

---

[36] *See id.*

[37] *See* Docket No. 40 Ex. 1.

[38] *See Brown v. Hain Celestial Group, Inc.*, Case No. C 11-03082 LB, --- F. Supp. 2d --- , (N.D. Cal. 2012) (listing cases and explaining sufficient similarity reasoning).

[39] *See, e.g.*, *Colucci*, 2012 WL 6737800, at *4; *Astiana*, 2012 WL 2990766, at *11.

[40] *See Astiana*, 2012 WL 2990766, at *11 (noting that "there is authority going both ways" and listing cases).

[41] *See Koh*, 2010 WL 94265, at *3.

[42] *See Colucci*, 2012 WL 6737800, at *4; *Astiana*, 2012 WL 2990766, at *11.

9

Case No.: C 12-1828 LHK
ORDER

have discussed "sufficient similarity" in terms of standing,[43] as it explained above, the court is persuaded that the standard is better suited to the typicality and adequacy factors.

Claims based on Ogden's actual purchases obviously may be the subject of discovery because she has made a prima facie showing of typicality for those products, and Bumble Bee in fact already has agreed to produce information for those products.[44]  And claims for which Ogden clearly is not typical – for example, if she also included claims of Title VII violations by Bumble Bee – should not be subject to discovery by Bumble Bee because she has not established even a prima facie showing of typicality for those claims.

Employing this approach, the court evaluates Ogden's claims regarding Bumble Bee's entire product line.  Ogden offers examples of the labels from some of the other products to support her contention that these other products fall within the "sufficiently similar" standard.[45]  But unlike the cases in which courts have applied the standard, here not all of the labels bear one similar claim on which all consumers could have relied.  Many of the labels share claims about Omega-3s, but other labels Ogden offers do not.[46]  And Ogden's complaint reveals that her causes of actions do not stem from similar alleged misrepresentations but rather similar types of alleged misrepresentations – for example, misrepresentations about nutrient and vitamin content.[47]

Ogden asserts that her purchases are "sufficiently similar" to the entire line of Bumble Bee's products because her claims involve only improper labeling, which as noted above other courts have determined falls within the "sufficient similarity" standard.  But Ogden's claims are not limited to a particular advertisement on the products she bought that also were included on other

---

[43] *See Brown*, --- F. Supp. 2d ---.

[44] *See* Docket No. 33.

[45] *See* Docket No. 40 Ex. 1.

[46] *See id.*

[47] *See* Docket No. 14 ¶ 133.

Case No.: C 12-1828 LHK
ORDER

10

United States District Court
For the Northern District of California

products as was the situation in the cases she cites. She alleges, for example, that Bumble Bee included "unauthorized health or drug claims" or banners about nutrient or health claims belied by the actual ingredients of the product.[48] Her claims are different from *Astiana v. Dreyer's Grand Ice Cream, Inc.*, in which all of the products at issue involved ice cream with the label "All Natural Flavors,"[49] or *Koh v. S.C. Johnson & Son, Inc.*, where the claims involved a label appearing on several product lines that advertised all of the products as environmentally friendly.[50]

The court finds that Ogden has made a prima facie showing of typicality only as to products with similar or identical claims about Omega-3 content, as those labels may have misled class members in the same way that they allegedly misled Ogden even if the products are not the same. She also has established a prima facie showing of typicality for products with essentially the same ingredients as the products she purchased, as those also fall within sufficient similarity test.

But the court finds that Ogden has not made a prima facie showing of typicality for products with allegedly false nutrient information that are not similar to the products she purchased. She essentially asserts that she can represent purchasers who relied on any allegedly false nutritional claim on any Bumble Bee product. Her counsel suggested as much at the oral argument when he asserted that the benefit of the class action is to avoid having to bring 70 different cases. Typicality does not extend that far, and nothing in the standard Ogden herself propounds suggests such latitude.

Even if Ogden did not make a prima facie showing, she could still obtain discovery for these other products if she satisfied her burden "to demonstrate that discovery measures are likely

---

[48] *See* Docket No. 14 ¶ 133.

[49] 2012 WL 2990766, at *11.

[50] 2010 WL 94265, at *3.

Case No.: C 12-1828 LHK
ORDER

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

to produce persuasive information substantiating class action allegations."[51]  As described above,
Ogden provided the court with pictures of the labels for many of the products for which she seeks
discovery.[52]  But those images do not demonstrate that Ogden would be able, through discovery, to
show that those products fall within the "sufficiently similar" standard.  The court has already
described how the products falling outside of the standard's two prongs – identical label claim or
nearly identical ingredients – do not satisfy the standard and does not repeat that explanation here.
Because those images do not support that the products fall within the standard, the court finds that
Ogden's submission does not satisfy her burden.  Because Ogden has made no other showing to the
court, she has not met her burden to show that discovery could substantiate her claims for those
other products.  Discovery for those products is DENIED.

> **b.    Rule 23(b)**

Ogden has made a prima facie showing of the Rule 23(a) factors for the products she
bought, the products with a similar "Omega-3" claim on their labels, and products with nearly
identical ingredients as the products she purchased.  The court now considers whether she has
satisfied the required showing for one of the Rule 23(b) categories.  Ogden appears to be pursuing
either a Rule 23(b)(2) class or a Rule 23(b)(3) class.  Because the court finds that Ogden made a
prima facie showing for her Rule 23(b)(3) class, the court does not consider whether she has made
a showing for Rule 23(b)(2).

Rule 23(b)(3) permits certification of a class when "the court finds that the questions of law
or fact common to class members predominate over any questions affecting only individual
members, and that a class action is superior to other available methods for fairly and efficiently
adjudicating the controversy."  To support her Rule 23(b)(3) allegations, Ogden states that the
questions regarding whether Bumble Bee mislabeled its  products or included misleading

---

[51] *Doninger*, 564 F.3d at 1313.

[52] *See* Docket No. 40 Ex. 1.

Case No.: C 12-1828 LHK
ORDER

United States District Court
For the Northern District of California

representations on its labels are common to the class and predominate over any individualized questions.[53]  Ogden also points to the relatively small recovery and to the potentially different outcomes from diffuse litigation to show that a class action is superior to individualized recovery.[54]

The court finds that Ogden has sufficiently pleaded a prima facie Rule 23(b)(3) action for the purposes of allowing discovery.  The court also notes that discovery would aid Ogden to substantiate her Rule 23(b)(3) claims.  Because the Ninth Circuit has advised that courts ought to allow discovery when it is necessary to aid a class certification motion,[55] the court finds that Ogden should be permitted to take discovery for the products the court identified above.

Bumble Bee's discovery obligation therefore is to produce information for products that advertise the same Omega-3 claims as the Sardines and Tuna Salad that Ogden purchased or that have similar ingredients, presumably tuna and sardines.  Other than references to the "sufficient similarity" test, Ogden has not offered any other showing that further discovery would aid in substantiating her typicality arguments for the claims outside of the identical labels or identical ingredients products.[56]  The court therefore limits discovery to products that may fall within the standard Ogden propounds but not for products that lie beyond that standard.

**B.      Time Frame**

Ogden also seeks discovery from Bumble Bee dating back to 2004, four years before the applicable statute of limitations or the class definition Ogden is pursuing.  According to Ogden, the early time frame is necessary to uncover "state of mind" evidence regarding Bumble Bee's marketing practices.[57]  In support of that assertion, Ogden points to a former Bumble Bee

---

[53] *See* Docket No. 14 ¶ 137.

[54] *See id.* ¶ 140.

[55] *See Vinole*, 571 F.3d at 942.

[56] *See* Docket No. 33.

13

Case No.: C 12-1828 LHK
ORDER

employee who in a deposition indicated that Bumble Bee's decisions regarding its current labeling occurred at least in part back in 2007.[58]  Ogden also points to documents Bumble Bee turned over that appear to have been created before 2008[59] and asserts that Bumble Bee essentially has waived its argument about information pre-dating the statute of limitations period.

Bumble Bee's reliance on the statute of limitations is misplaced.  The applicable limitations period restricts the time period for consumers to bring claims for their purchases – it does not limit the time to bring claims for Bumble Bee's marketing decisions.[60]  That the decisions may have occurred outside of the limitations period does not change Bumble Bee's potential liability for selling allegedly falsely labeled products within the statute of limitations.

In its opposition, Bumble Bee agreed to produce information dating back to 2004 for the labeling and marketing practices for the products Ogden identified in her complaint.[61]  Because the court has determined that Ogden is entitled to discovery of products with the same Omega-3 label or with nearly identical ingredients, the court finds that discovery regarding the marketing and labeling practices from before the statute of limitations for those products also is appropriate. Information about how Bumble Bee decided to add the labels onto the products would either be relevant to Ogden's claims or could lead to admissible evidence supporting her claims.  The court agrees with Bumble Bee, however, that information such as sales numbers, advertising expenditures, profits, costs, or other information not tied to the marketing decisions is not relevant beyond the limitations period.

---

[57] *See id.*

[58] *See id.* Ex. F at 34:8-22.

[59] *See id.* Ex. D.

[60] *See* Cal. Civ. P. Code §§ 337, 338; Cal. Civ. Code §§ 17200, 17500; *see also Ries v. Ariz. Beverages USA LLC*, 287 F.R.D. 523, 534 (N.D. Cal. 2012) (noting that statute of limitations began to run after plaintiff had notice after purchase of beverage that advertisement may have been false).

[61] *See* Docket No. 39.

14

Case No.: C 12-1828 LHK
ORDER

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

Ogden has shown that information about marketing and labeling decisions pre-dating 2008 falls within the broad definition of relevance under Rule 26(b).  Those decisions extend to the products for which the court determined Ogden may be able to pursue claims as described above.  This request therefore is GRANTED-IN-PART.

**C.      King Oscar Material**

The court is unclear exactly what dispute the parties have regarding the King Oscar products.  Ogden seeks information that is within the control, custody, or possession of Bumble Bee.[62]  Bumble Bee asserts that it has provided any documents that are within its control but that many of the requests for admission and for production ask for information or documents that are within the exclusive control of King Oscar.[63]

Ogden has not provided evidence or even significant argument that somehow the requests she makes for documents actually are in Bumble Bee's control, custody, or possession as required by Fed. R. Civ. P. 26(a), and she does not argue that the two corporations are one legal entity.  The basis for her request for admissions is that a link from Bumble Bee's website leads to King Oscar's website, and so Bumble should make admissions regarding the representations on King Oscar's page.[64]  But from the court's review of the two websites,[65] the second appears to belong exclusively to King Oscar.  Ogden has not provided any evidence other than the link between the two sites to support her argument that Bumble Bee must answer for the representations on King Oscar's website.

---

[62] *See* Docket No. 33.

[63] *See* Docket No. 39.

[64] *See* Docket No. 33.

[65] *See* "Bumble Bee Presents: King Oscar," Bumble Bee Foods, LLC, http://www.bumblebee.com/products/king-oscar (last visited Mar. 26, 2013); "KO in the USA," King Oscar, http://www.kingoscar.com/products-by-market/usa (last visited Mar. 26, 2013).

Case No.: C 12-1828 LHK
ORDER

1    Absent evidence that Bumble Bee is withholding documents in its possession,[66] the court

2   cannot issue an order compelling Bumble Bee to produce documents it states it does not have.  This

3   request by Ogden is DENIED.

### IV.    CONCLUSION

5    Bumble Bee shall produce to Ogden documents responsive to her requests for products with

6   Omega-3 labels or with nearly identical ingredients – specifically tuna or sardines as a main

7   ingredient.  Bumble Bee shall also produce documents dating back to 2004 regarding the marketing

8   and labeling strategies for the products Ogden purchased and for products with the same Omega-3

9   label or with nearly identical ingredients.  Bumble Bee shall complete its production within twenty-

10   one days of this order.  All other relief requested is DENIED.

11   **IT IS SO ORDERED.**

12   Dated:  April 16, 2013

13                                          _Paul S. Grewal_____
                                           PAUL S. GREWAL
14                                          United States Magistrate Judge

---

[66] *See MGA Ent'mt, Inc. v. Nat. Products Ltd.*, Case No. CV 10-07083 JAK (SSx), 2011 WL 4550287, at *2 (C.D. Cal. Oct. 3, 2011) (noting that a party's "mere suspicion that additional documents exist does not justify a motion to compel").

16

Case No.: C 12-1828 LHK
ORDER