1  Forrest A. Hainline III (SBN 64166)
   *fhainline@goodwinprocter.com*
2  Patrick S. Thompson (SBN 160804)
   *pthompson@goodwinprocter.com*
3  Robert B. Bader (SBN 233165)
   *rbader@goodwinprocter.com*
4  **GOODWIN PROCTER LLP**
   Three Embarcadero Center, 24th Floor
5  San Francisco, California 94111
   Tel.:  415.733.6000
6  Fax.:  415.677.9041

7  Attorneys for Defendant
   BUMBLE BEE FOODS, LLC
8

9                **UNITED STATES DISTRICT COURT**

10             **NORTHERN DISTRICT OF CALIFORNIA**

11                   **SAN JOSE DIVISION**

12

| 13 TRICIA OGDEN, individually and on behalf of all others similarly situated, | Case No. 5:12-cv-01828-LMK |
|---|---|
| 14 Plaintiff, | **BUMBLE BEE FOODS, LLC'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |
| 15 v. | |
| 16 BUMBLE BEE FOODS, LLC, | |
| 17 Defendant. | Date:        December 12, 2013 |
| 18 | Time:        1:30 p.m.<br>Courtroom:   8, Fourth Floor |
| 19 | Judge:       Hon. Lucy M. Koh |

20

21

22

23

24

25

26

27

28

1

## TABLE OF CONTENTS

2 **NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT** ............................ v

3 **STATEMENT OF THE ISSUES TO BE DECIDED** ................................................... vi

4 **MEMORANDUM OF POINTS AND AUTHORITIES** ............................................... 1

5 **I.     INTRODUCTION** ............................................................................................ 1

6 **II.    OGDEN'S CLAIMS** ......................................................................................... 1

7 **III.   FACTS NOT FAIRLY IN DISPUTE** ............................................................. 2

8       A.     Ogden's Reasons for Purchasing Bumble Bee Products ......................... 2

9       B.     The Statements on Bumble Bee's Labels Are True ................................. 3

10           1.     Bumble Bee's Products Are an Excellent Source of Omega-3 ................ 3

11           2.     Bumble Bee Truthfully Disclosed Fat, Sodium and Cholesterol

12               Levels ................................................................................................... 4

          3.     Ogden Does Not Claim that the Nutrition Facts Statement Regarding
13               the Amount of Iron and Vitamin A in Sardines is False ........................ 5

14 **IV.   BUMBLE BEE IS ENTITLED TO SUMMARY JUDGMENT** ..................... 5

15       A.     Ogden Does Not Have Standing to Assert Her UCL, FAL and CLRA
              Claims (Counts 1-6) ............................................................................. 6
16
      B.     Ogden Lacks Standing to Enforce the FDCA or Sherman Law ............... 7
17
      C.     Ogden Cannot Establish Breach of Warranty (Counts 8 & 9) ................. 8
18
      D.     Ogden Cannot Prove the Right to Any Remedy .................................... 10
19
          1.     Ogden Cannot Prove Any Right to Restitution ..................................... 10
20
          2.     Ogden Cannot Prove Any Right to Disgorgement .................................. 11
21
          3.     Ogden Cannot Obtain an Injunction ...................................................... 11
22
**V.     CONCLUSION** .............................................................................................. 12
23

24

25

26

27

28

1

## **TABLE OF AUTHORITIES**

2

**Page(s)**

3

**CASES**

4

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ...................................................................................................... 5, 6

5

*Astiana v. Dreyer's Grand Ice Cream, Inc.*,
    2012 WL 2990766 (N.D. Cal. July 20, 2012) .......................................................... 9

6

7

*Brazil v. Dole Food Co.*,
    2013 WL 1209955 (N.D. Cal. Mar. 25, 2013) .................................................... 9, 10

8

9

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ...................................................................................................... 5, 6

10

*Colgan v. Leatherman Tool Group, Inc.*,
    135 Cal. App. 4th 663 (2006) ....................................................................................... 10

11

12

*Dvora v. General Mills, Inc.*,
    2011 WL 1897349 (C.D. Cal. May 16, 2011) ......................................................... 7

13

14

*Hairston v. South Beach Beverage Co.*,
    2012 WL 1893818 (C.D. Cal. May 18, 2012) ...................................................... 7, 9

15

*Hartless v. Clorox Co.*,
    2007 WL 3245260 (S.D. Cal. Nov. 2, 2007) .......................................................... 8

16

17

*In re Actimmune Mktg. Litig.*,
    2010 WL 3463491 (N.D. Cal. Sept. 1, 2010) .......................................................... 7

18

19

*In re Epogen & Aranesp Off-Label Mktg. & Sales Practices Litig.*,
    590 F. Supp. 2d 1282 (C.D. Cal. 2008) .................................................................... 8

20

*In re Facebook, Inc., PPC Advertising Litig.*,
    2012 WL 1253182 (N.D. Cal. Apr. 13, 2012) ....................................................... 10

21

22

*In re Google AdWords Litig.*,
    2012 WL 28068 (N.D. Cal. Jan. 5, 2012) ................................................................. 10

23

24

*In re Napster Inc. Copyright Litig.*,
    354 F. Supp. 2d 1113 (N.D. Cal. 2005) ................................................................... 11

25

*In re Tobacco II Cases*,
    46 Cal. 4th 298 (2009) .................................................................................................... 7

26

27

*In re Vioxx Class Cases*,
    180 Cal. App. 4th 116 (2009) ............................................................................... 10, 11

28

ii

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT       Case No. 5:12-cv-01828-LMK

*Johns v. Bayer Corp.*,
  2010 WL 476688 (S. D. Cal. Feb. 9, 2010) .............................................................................. 11

*Kanter v. Warner-Lambert Co.*,
  99 Cal. App. 4th 780 (2002)...................................................................................................... 9

*Korea Supply Co. v. Lockheed Martin Corp.*,
  29 Cal. 4th 1134 (2003)...................................................................................................... 10, 11

*Kwikset Corp. v. Superior Court*,
  51 Cal. 4th 310 (2011).............................................................................................................. 6

*Larsen v. Trader Joe's Co.*,
  2012 WL 5458396 (N.D. Cal. June 14, 2012) ......................................................................... 9

*Littlehale v. The Hain Celestial Group, Inc.*,
  2012 WL 5458400 (N.D. Cal. July 2, 2012) ............................................................................ 9

*Low v. LinkedIn Corp.*,
  900 F. Supp. 2d 1010 (N.D. Cal. 2012) .................................................................................. 10

*Mass. Mut. Life Ins. Co. v. Superior Court*,
  97 Cal. App. 4th 1282 (2002).................................................................................................... 6

*Perez v. Nidek Co.*,
  711 F.3d 1109 (9th Cir. 2013).................................................................................................... 8

*Pfizer Inc. v. Superior Court*,
  182 Cal. App. 4th 622 (2010)................................................................................................... 11

*PhotoMedex, Inc. v. Irwin*,
  601 F.3d 919 (9th Cir. 2010)...................................................................................................... 8

*Rubio v. Capital One Bank*,
  613 F.3d 1195 (9th Cir. 2010).................................................................................................... 6

*Sandoz Pharmaceuticals Corp. v. Richardson-Vicks, Inc.*,
  902 F.2d 222 (3d Cir. 1990)....................................................................................................... 8

*Smith v Ebay Corp.*,
  2012 WL 27718 (N.D. Cal. Jan. 5, 2012) .............................................................................. 10

*Soremekun v. Thrifty Payless, Inc.*,
  509 F.3d 978 (9th Cir. 2007)...................................................................................................... 6

*Thomas v. Costco Wholesale Corp.*,
  2013 WL 1435292 (N.D. Cal. Apr. 9, 2013) ...................................................................... 9, 10

*United Steelworkers of Am. v. Phelps Dodge Corp.*,
  865 F.2d 1539 (9th Cir. 1989) (en banc)................................................................................... 5

iii

1

**STATUTES**

2    15 U.S.C. § 2301(6)(1)................................................................................................................ 9

3    15 U.S.C. § 2310(d)(3)(C) ......................................................................................................... 9

4    21 U.S.C. § 301 .......................................................................................................................... 3

5    21 U.S.C. § 332 .......................................................................................................................... 8

6    21 U.S.C. § 333 .......................................................................................................................... 8

7    21 U.S.C. § 334 .......................................................................................................................... 8

8    21 U.S.C. § 337(a)...................................................................................................................... 7

9    21 U.S.C. § 343(r)(2)G............................................................................................................... 4

10   21 U.S.C. § 372 .......................................................................................................................... 8

11   Cal. Bus. & Prof. Code § 17204................................................................................................ 6

12   Cal. Civ. Code § 1780(a)............................................................................................................ 6

13   Cal Civ. Code § 1791(a)............................................................................................................. 9

14   Cal. Civ. Code § 1791.2(a)(1) ................................................................................................. 10

15   Cal. Civ. Code § 1792 ............................................................................................................... 9

16   Cal. Health & Safety Code § 111900 ....................................................................................... 8

17   **OTHER AUTHORITIES**

18   Fed. R. Civ. P. 56(a).................................................................................................................. 5

19   Fed. R. Civ. P. 56(e).................................................................................................................. 6

20

21

22

23

24

25

26

27

28

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT    Case No. 5:12-cv-01828-LMK

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT**

TO PLAINTIFF AND HER COUNSEL OF RECORD:

PLEASE TAKE NOTICE that, on December 12, 2013 at 1:30 p.m., or as soon thereafter as counsel may be heard, defendant Bumble Bee Foods, LLC ("Bumble Bee") will bring on for hearing before the Honorable Lucy H. Koh, United States District Judge, in Courtroom 4, 5th Floor, at the United States Courthouse, 280 South First Street, San Jose, California, its Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56.   Bumble Bee brings this Motion on the grounds that: (1) Ogden lacks standing to pursue her Unfair Competition Law ("UCL"), False Advertising Law ("FAL") and Consumer Legal Remedies Act ("CLRA") claims; (2) Ogden lacks standing to enforce the Food, Drug, and Cosmetics Act and the Sherman Law; (3) Ogden cannot establish that she is entitled to the relief sought in the Amended Complaint; (4) Ogden's Song-Beverly Warranty Act and Magnuson-Moss Warranty Act claims are inapplicable to the conduct alleged in the Amended Complaint and the subject product labels are not warranties; and (5) California does not recognize claims for unjust enrichment/quasi-contract.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declarations of Steven Mavity and Robert Bader, the Request for Judicial Notice, the files and documents on record in this action, and on such other written and oral argument as may be presented to the Court.

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT        Case No. 5:12-cv-01828-LMK

1

**STATEMENT OF THE ISSUES TO BE DECIDED**

2

Pursuant to Civil Local Rule 7-4(a)(3), Bumble Bee sets forth the following statement of

3

issues to be decided:

4

1.      Does Ogden lack standing to pursue her Unfair Competition Law ("UCL") claims

5

(Counts 1, 2 & 3), False Advertising Law ("FAL") claims (Counts 4 & 5) and Consumer Legal

6

Remedies Act ("CLRA") claim (Count 6)?

7

2.      Does Ogden lack standing to enforce the Food, Drug, and Cosmetics Act and

8

Sherman Law?

9

3.      Is Bumble Bee entitled to summary judgment on Ogden's requests for restitution,

10

disgorgement and injunctive relief under the UCL, FAL and CLRA?

11

4.      Is Bumble Bee entitled to summary judgment on Ogden's Song-Beverly Warranty

12

Act claim (Count 8) and Magnuson-Moss Warranty Act claim (Count 9) because those Acts are

13

inapplicable and the product labels are not warranties?

14

5.      Is Bumble Bee entitled to summary judgment on Ogden's Restitution Based on

15

Unjust Enrichment/Quasi-Contract claim (Count 7) because California does not recognize such

16

claims?

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT       Case No. 5:12-cv-01828-LMK

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

3

This Memorandum supports Bumble Bee Foods, LLC's ("Bumble Bee") motion for summary judgment on plaintiff Tricia Ogden's ("Ogden") Amended Complaint ("AC").

4

**I.     INTRODUCTION**

5

6

7

Ogden's lawsuit is predicated on Bumble Bee's purported technical violations of arcane food labeling regulations Ogden was not aware of, and that no "reasonable consumer" would be aware of or care about before purchasing Bumble Bee products.

8

**II.    OGDEN'S CLAIMS**

9

10

11

12

13

The Amended Complaint alleges that Ogden purchased two "misbranded" products that Bumble Bee distributes: Bumble Bee Tuna Salad with Crackers ("Tuna Salad") and King Oscar Sardines Mediterranean Style ("King Oscar Sardines").  At her deposition, Ogden testified that she also purchased Bumble Bee Solid Albacore Tuna in Water ("Albacore") (Ogden Dep. 85:13-15) (collectively, the "Bumble Bee Products").

14

15

Ogden's 100+ paragraphs of "Factual Allegations" (some of which have nothing to do with Bumble Bee) can be distilled into four assertions:

16

17

18

1.      The Bumble Bee Products are labeled or advertised "Rich in Natural Omega-3" or "Excellent Source Omega-3" and violate federal and state law because the specific types of Omega-3s are not mentioned (AC, ¶¶ 57-65);

19

20

21

2.      King Oscar Sardines are labeled or advertised with a nutrient content claim for a nutrient lacking a Daily Value or lacking the minimum Daily Value of Iron or Vitamin A (AC, ¶¶ 50, 78);

22

23

24

3.      The Bumble Bee Products are labeled or advertised with a nutrient or health claim despite containing a disqualifying nutrient level precluding the claim (AC, ¶¶ 66, 67, 81, 90-99); and

25

26

4.      King Oscar Sardines are labeled or advertised with an unauthorized health or drug claim (AC, ¶¶ 73-101).

27

Based on these four core allegations, Ogden asserts nine causes of action:

28

- California's Unfair Competition Law (Counts 1-3);

1

1    • California's False Advertising Law (Counts 4 & 5);

2    • California's Consumer Legal Remedies Act (Count 6);

3    • Restitution (Count 7);

4    • California's Beverly-Song Warranty Act (Count 8); and

5    • Magnuson-Moss Warranty Act (Count 9).

6   At its core, every count of Ogden's Amended Complaint is based on her claim that Bumble

7 Bee has violated a regulation promulgated by the Food and Drug Administration governing

8 nutrition claims.

9 **III. FACTS NOT FAIRLY IN DISPUTE**

10   The material facts not fairly in dispute are few, and completely undermine Ogden's claims.

11   **A. Ogden's Reasons for Purchasing Bumble Bee Products**

12   Ogden purchased only three Bumble Bee Products: Tuna Salad, Albacore, and King Oscar

13 Sardines (Ogden Dep. 25:6-15, 85:13-15). She bought these products because of taste,

14 convenience and Omega-3 statements on the label (Ogden Dep. 25:16-26:4, 26:21-27:1, 102:5-

15 21). Of these considerations, taste and convenience were the most important (Ogden Dep. 19:21-

16 20:6, 20:18-20, 27:11-18, 30:17-19). She continued to buy and eat Bumble Bee Albacore after the

17 lawsuit began, but no longer buys the Bumble Bee brand (Ogden Dep. 86:7-23, 120:11-18, Exh.

18 24 (TO0010, TO0013, TO0021, TO0022)).

19   Ogden understood the statements "excellent source of Omega-3" and "rich in Omega-3" to

20 mean the product has a lot of Omega-3 in it (Ogden Dep. 58:9-59:1). She does not know if there

21 are any standards for a company making an excellent source of Omega-3 claim (Ogden Dep.

22 59:12-15). Ogden has no knowledge of the different kinds of Omega-3s (Ogden Dep. 22:12-23:3).

23   Ogden does not look at the Nutrition Facts information on products (Ogden Dep. 60:1-

24 61:6). She did not consider the daily values for the Bumble Bee Products she purchased (Ogden

25 Dep. 67:21-68:1). She observed that there is too much information on food labels for her to read,

26 and she does not have time to do so (Ogden Dep. 59:16-20, 70:21-71:7). She did not look on the

27 labels of the Bumble Bee Products for fat content (Ogden Dep. 65:12-20). Although Ogden did

28 not read the Nutrition Facts or ingredient list—because she would not have had time to go through

2

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT  Case No. 5:12-cv-01828-LMK

1    all the small information—she understood that the Tuna Salad contains mayonnaise, and as a

2    result, contained fat (Ogden Dep. 59:16-20, 62:10-12, 64:4-7, 68:8-16).   With respect to the

3    Sardines, Ogden understood that they contained olive oil (Ogden Dep. 96:2-11).   Ogden believes

4    there is a lot of cholesterol in olive oil (Ogden Dep. 125:4-6).

5          Ogden did not consider the amount of sodium in making her purchase decision (Ogden

6    Dep. 68:24-69:3).   Nor did she consider the amount of cholesterol (Ogden Dep. 68:19-23).   Ogden

7    does not know the cholesterol content of the foods she eats for dinner (Ogden Dep. 111:5-7).

8          At deposition, Ogden did not mention iron or Vitamin A as a reason for purchasing any

9    Bumble Bee Product (Ogden Dep. 74:23-75:5, 76:6-13).   Ogden did not access the King Oscar

10   website before purchasing Sardines (Ogden Dep. 106:2-7).   She could not recall ever looking at

11   any company's website other than Bumble Bee's to assess the nutritional value of its products

12   (Ogden Dep. 56:2-9).

13         **B.      The Statements on Bumble Bee's Labels Are True**

14         Preliminarily, there is scientific consensus that Omega-3 fatty acids are good for human

15   consumption, even essential.   Omega-3 fatty acids must come from human diet, because they

16   cannot be made by the body (RJN, Ex. A.).

17         **1.      Bumble Bee's Products Are an Excellent Source of Omega-3**

18         The three Bumble Bee Products Ogden claims she bought contain more than the minimum

19   amounts of "EPA" and "DHA" Omega-3 fatty acids necessary to make "excellent source" and

20   "rich in" claims under federal food labeling laws.

21         The FDA Modernization Act of 1997 ("FDAMA"), 21 U.S.C. § 301 *et seq.*, amended the

22   Federal Food, Drug, and Cosmetic Act ("FDCA") to allow manufacturers and distributors to use

23   health claims or nutrient content claims in food and dietary supplement labeling if such claims are

24   based on current, published, authoritative statements from certain federal scientific bodies, as well

25   as from the National Academy of Sciences. Before such claims may be used in labeling, a

26   notification must be submitted to the Food and Drug Administration ("FDA") demonstrating that

27   the statement upon which the claims rely is an authoritative statement meeting the criteria set forth

28   in the FDAMA amendments.   If FDA does not object to the notification within 120 days, the

3

1  claims are deemed authorized.  The submitter and any other manufacturer or distributor may then

2  use the claims in accordance with the criteria set forth in the notification.

3      In December 2005 Ocean Nutrition Canada submitted a notification to FDA under 21

4  U.S.C. § 343(r)(2)G) to which FDA has not objected (RJN, Exh. B).  That notification permits the

5  following claim:

6      Excellent source of Omega-3 EPA and DHA ("High in Omega-3 IPA and

7      DHA;" "Rich in Omega-3 EPA and DHA"). Contains ___ mg of EPA and

8      DHA combined per serving, which is ___% of the 160 mg Daily Value for

9      a combination of EPA and DHA. [Products must contain a combined total

10      of at least 32 mg of EPA and DHA to qualify for this claim.]

11  In order to qualify for making an "Excellent source of Omega-3" or "Rich in Omega-3" claim, a

12  product must contain a total of at least 32 mg of EPA and DHA combined.

13      Each of the Bumble Bee Products contains at least 32 mg of EPA and DHA combined, and

14  thus qualifies for an "Excellent source of Omega-3" or "Rich in Omega-3" claim. In fact, the

15  combined levels range higher than that in each product: 36 to 55 mg per 82 gram serving in the

16  Tuna Salad; 1785 to 1955 mg per 85 gram serving in the Sardines; and 74 to 1001 mg per 56 gram

17  serving in the Albacore (Mavity Decl., ¶¶ 6-7, Exhs. A-C).  Bumble Bee's claims that its products

18  are an "excellent source of" and "rich in" Omega-3 fatty acids are truthful and satisfy the FDA's

19  content standards, whether the amounts of EPA and DHA fatty acids are specified on the labels or

20  not.

21      **2.      Bumble Bee Truthfully Disclosed Fat, Sodium and Cholesterol Levels**

22      Each of the Bumble Bee Products plainly discloses the amount of fat, sodium, and

23  cholesterol the package contains (Bader Decl., Exhs. A-D).  Ogden was aware of the Nutrition

24  Facts section on the packages, but was too busy to look (Ogden Dep. 60:1-61:6).  She never

25  considered the daily values for the products she purchased (Ogden Dep. 67:21-68:1).  There is no

26  rational reason to imagine that putting an additional statement on the front of the labels asking her

27  to look at the nutrition information would have made any difference.  Ogden believes there is

28  already too much information on food labels for her to look (Ogden Dep. 59:16-20, 70:21-71:3).

4

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT      Case No. 5:12-cv-01828-LMK

Ogden thought that Tuna Salad and Sardines contain ingredients with "high" levels of fat and cholesterol, yet she bought the products anyway (Ogden Dep. 59:16-20, 62:10-12, 64:4-7, 68:8-16, 96:2-11).

### 3.      Ogden Does Not Claim that the Nutrition Facts Statement Regarding the Amount of Iron and Vitamin A in Sardines is False

Ogden does not claim that the Nutrition Facts statement regarding the amount of Iron and Vitamin A in Sardines is false (*see generally* AC).

## IV.      BUMBLE BEE IS ENTITLED TO SUMMARY JUDGMENT

Under Federal Rule of Civil Procedure 56(a), "the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Material facts are those that may affect the outcome of the case.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).  A dispute as to a material fact is "genuine" if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party."  *See id.*  "[I]n ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden."  *Id.* at 254.  The question is "whether a jury could reasonably find either that the [moving party] proved his case by the quality and quantity of evidence required by the governing law or that he did not."  *Id.* (emphasis omitted).  "[A]ll justifiable inferences are to be drawn in [the nonmovant's] favor."  *See United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1542 (9th Cir. 1989) (en banc) (citing *Anderson*, 477 U.S. at 255).

The moving party bears the initial responsibility for informing the district court of the basis for its motion and identifying those portions of the pleadings, depositions, interrogatory answers, admissions and affidavits, if any, that it contends demonstrate the absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party, but on an issue for which the opposing party will have the burden of proof at trial, the party moving for summary judgment need only point out "that there is an absence of evidence to support the nonmoving party's case."

5

1    *Id.* at 325; *accord Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).  Once the

2    moving party meets its initial burden, the nonmoving party "may not rest upon the mere

3    allegations or denials of [that party's] pleading, but ... must set forth specific facts showing that

4    there is a genuine issue for trial."  *Anderson*, 477 U.S. at 250; *see also* Fed. R. Civ. P. 56(e).

5    **A.    Ogden Does Not Have Standing to Assert Her UCL, FAL and CLRA Claims**
     **(Counts 1-6)**

6

7    The UCL and FAL expressly limit standing to plaintiffs who have lost money or property

     "as a result of" the defendant's alleged misconduct.  Cal. Bus. & Prof. Code § 17204.  Similarly, a

8    CLRA action can only be brought by a "consumer who suffers damages as a result of the use or

9    employment by any person of" acts prohibited by the CLRA.  Cal. Civ. Code § 1780(a).  The "as a

10   result of" language was added to the UCL in 2004 by Proposition 64, and imposes a causation

11   requirement.  *See Rubio v. Capital One Bank*, 613 F.3d 1195, 1204 (9th Cir. 2010) ("[the UCL]

12   requires a 'causal connection' between [the defendant's] alleged UCL violation and her injury in

13   fact"); *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 326 (2011).  The same is true under the

14   CLRA.  *Mass. Mut. Life Ins. Co. v. Superior Court*, 97 Cal. App. 4th 1282, 1292-93 (2002) (a

15   CLRA plaintiff must show that the defendant's conduct was deceptive and that the deception

16   caused them harm).  To defeat summary judgment, Ogden must produce evidence of injury of fact.

17   Ogden cannot make this showing.

18   Ogden lacks standing to maintain her UCL, FAL and CLRA claims because she did not

19   purchase the Bumble Bee Products as a result of any false or misleading statement.

20
     - Ogden purchased only three Bumble Bee Products: Tuna Salad, Albacore, and
21
       King Oscar Sardines.  She bought these products because of taste, convenience and
22
       Omega-3 statements on the label. Ogden understood the statements "excellent
23
       source of Omega-3" and "rich in Omega-3" to mean the product has a lot of
24
       Omega-3 in it.  She does not know if there are any standards for a company making
25
       an excellent source of Omega-3 claim.  Ogden has no knowledge of the different
26
       kinds of Omega-3s.  The Bumble Bee Products qualify for "excellent source of
27
       Omega-3" and "rich in Omega-3" claims.  (*See* Sections III.A and III.B, *supra*)
28

6

1

- Ogden never mentioned the nutrient levels on the Sardines package as a reason for

2

her purchase.  It could not have been, as she never looks at the Nutrition Facts

3

statements.

4

- The levels of fat, sodium and cholesterol are conspicuously displayed in the

5

Nutrition Facts box of the Bumble Bee Product packages (Bader Decl., Exhs. B-D).

6

Ogden does not read Nutrition Facts because she does not have time and there is

7

too much information on the labels.  *See Hairston v. South Beach Beverage Co.*,

8

2012 WL 1893818, at \*4 (C.D. Cal. May 18, 2012) (finding that no reasonable

9

consumer would be misled by "all natural" language where "detailed information in

10

the ingredient list . . . explains the exact contents" of the product); *Dvora v.*

11

*General Mills, Inc.*, 2011 WL 1897349, at \*7 (C.D. Cal. May 16, 2011) (finding

12

that "any reasonable consumer would be put on notice of the product's contents

13

simply by doing sufficient reading of the ingredient list").

14

- Ogden never viewed the King Oscar website, where the supposed unauthorized

15

health claims are made (Ogden Dep. 106:2-7).

16

If Bumble Bee Products technically violated the FDCA or the Sherman Law, the violation

17

did not harm Ogden. Proposition 64 was passed to prevent suits alleging "ridiculously minor

18

violations of some regulation or law," where a plaintiff was neither injured by nor relied on any

19

allegedly unfair business practice.  *In re Tobacco II Cases*, 46 Cal. 4th 298, 316 (2009); *In re*

20

*Actimmune Mktg. Litig.*, 2010 WL 3463491, at \*8-9 (N.D. Cal. Sept. 1, 2010) (dismissing UCL

21

claims brought under the unlawful prong alleging off-labeling marketing of a drug under the

22

FDCA and Sherman Law, because the alleged regulatory violations did not result in any pecuniary

23

harm to the plaintiff).

24

**B.     Ogden Lacks Standing to Enforce the FDCA or Sherman Law**

25

The FDCA explicitly reserves enforcement power to the federal government: "all such

26

proceedings for the enforcement, or to restrain violations, of this Act [21 USCS §§ 301 et seq.]

27

shall be by and in the name of the United States."  21 U.S.C. § 337(a).  As the Ninth Circuit has

28

recognized, "[t]he FDA is responsible for investigating potential violations of the FDCA, and the

7

1   Act provides the agency with a range of enforcement mechanisms, such as injunction proceedings,

2   civil and criminal penalties, and seizure." *Perez v. Nidek Co.*, 711 F.3d 1109, 1119 (9th Cir. 2013)

3   21 U.S.C. §§ 332-34, 372.  Similarly, the Sherman Law expressly entrusts only the California

4   Attorney General or any district attorney with the power to enforce the law: "[t]he Attorney

5   General or any district attorney, on behalf of the department, may bring an action in superior court

6   and the court shall have jurisdiction upon hearing and for cause shown, to grant a temporary or

7   permanent injunction restraining any person from violating any provision of this part."  Cal.

8   Health & Safety Code § 111900.  Ogden lacks standing to enforce any technical violation of the

9   FDCA or Sherman Law because neither of those laws provide for a private right of action.

10          Ogden cannot use California's consumer protection laws to make an "end run" around the

11   FDCA's and Sherman Law's bar to private actions.  *In re Epogen & Aranesp Off-Label Mktg. &*

12   *Sales Practices Litig.*, 590 F. Supp. 2d 1282, 1290-91 (C.D. Cal. 2008) (finding that plaintiffs

13   could not use other federal statutes or state unfair competition laws as vehicle to bring private

14   cause of action based on violations of FDCA); *Hartless v. Clorox Co.*, 2007 WL 3245260, at *4

15   (S.D. Cal. Nov. 2, 2007) (finding that plaintiff was precluded from using Federal Insecticide,

16   Fungicide, and Rodenticide Act as predicate for UCL claim based on Congress' express rejection

17   of private actions to enforce Act); *PhotoMedex, Inc. v. Irwin*, 601 F.3d 919, 928 (9th Cir. 2010)

18   (holding Lanham Act does not create private right of action for FDCA violation when FDA has

19   not concluded there was such violation); *Sandoz Pharmaceuticals Corp. v. Richardson-Vicks, Inc.*,

20   902 F.2d 222 (3d Cir. 1990) (holding Lanham Act does not create private right of action where

21   FDCA and FTC Act do not).

22          **C.      Ogden Cannot Establish Breach of Warranty (Counts 8 & 9)**

23          This Court consistently has dismissed identical breach of warranty claims brought by the

24   attorneys representing Ogden in similar food misbranding cases.  The Court should follow that

25   precedent and dismiss Ogden's Magnuson-Moss Warranty Act and Song-Beverly Consumer

26   Warranty Act claims.

27          First, Ogden's Magnuson-Moss claim should be dismissed for lack of subject matter

28   jurisdiction.  A Magnuson-Moss claim cannot be brought in federal court unless the amount in

8

1    controversy of an individual claim is equal to or greater than $25, and the number of named

2    plaintiffs exceeds one hundred. 15 U.S.C. § 2310(d)(3)(C).  Ogden is the only named plaintiff.

3         Second, the Act is "expressly 'inapplicable to any written warranty the making or content

4    of which is otherwise governed by Federal law.'"  *Hairston*, 2012 WL 1893818, at *5; *Kanter v.*

5    *Warner-Lambert Co.*, 99 Cal. App. 4th 780, 797 (2002) (holding the Act is inapplicable because

6    the FDCA and regulations governed the label at issue).  Ogden concedes that the labels on the

7    Bumble Bee Products are governed by the FDCA and its implementing regulations (*see, e.g.*, AC,

8    ¶ 12).

9         Third, the Magnuson-Moss claim fails because the Bumble Bee Product labels are not

10   warranties subject to the Act.  A "written warranty" is defined as a "written affirmation of fact or

11   written promise made in connection with the sale of a consumer product by a supplier to a buyer

12   which relates to the nature of the material . . . and affirms or promises that such material . . . is

13   defect free or will meet a specified level of performance over a specified period of time."  15

14   U.S.C. § 2301(6)(1).  Although the word "defect" is not defined, this Court has concluded that

15   allegedly misbranded labels "constitute mere product descriptions rather than promises of defect-

16   free products or promises."  *Brazil v. Dole Food Co.*, 2013 WL 1209955, at *17 (N.D. Cal. Mar.

17   25, 2013) (Koh, J.); *Thomas v. Costco Wholesale Corp.*, 2013 WL 1435292, at *6 (N.D. Cal. Apr.

18   9, 2013); *Larsen v. Trader Joe's Co.*, 2012 WL 5458396, at *3 (N.D. Cal. June 14, 2012);

19   *Littlehale v. The Hain Celestial Group, Inc.*, 2012 WL 5458400 (N.D. Cal. July 2, 2012); *Astiana*

20   *v. Dreyer's Grand Ice Cream, Inc.*, 2012 WL 2990766, at *3 (N.D. Cal. July 20, 2012).

21        Finally, Ogden's Song-Beverly Warranty Act claim also fails. The Song-Beverly

22   Consumer Warranty Act provides that "every sale of consumer goods that are sold at retail in

23   [California] shall be accompanied by the manufacturer's and the retail seller's implied warranty

24   that the goods are merchantable."  Cal. Civ. Code § 1792.  A "consumer good" expressly excludes

25   "consumables."  Cal Civ. Code § 1791(a).  It is undisputed that the Bumble Bee Products—tuna

26   salad, albacore tuna and canned sardines—are consumables.  As such, these products are excluded

27   under the Act. In addition, the labels on the Bumble Bee Products do not create "express

28   warranties" because they do not "undertake to preserve or maintain the utility or performance" of

9

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT        Case No. 5:12-cv-01828-LMK

1    the products."  Cal. Civ. Code § 1791.2(a)(1).  For these reasons, the Court should dismiss

2    Ogden's Song-Beverly Warranty Act claim.  *Thomas*, 2013 WL 1435292, at *6; *Brazil*, 2013 WL

3    1209955, at *16.

4              **D.       Ogden Cannot Prove the Right to Any Remedy**

5                        **1.       Ogden Cannot Prove Any Right to Restitution**

6              Ogden seeks restitution for all of the amounts she allegedly paid for the Bumble Bee

7    Products (AC, ¶¶ 154, 163, 170, 178, 186).  Restitution under the UCL and FAL is designed to be

8    a "limited" remedy that "restore[s] the status quo by returning to plaintiff funds in which he or she

9    has an ownership interest."  *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144,

10   1149 (2003).  Restitution is limited to the return of "measurable amounts which are wrongfully

11   taken by means of an unfair business practice" and those amounts must be "supported by

12   substantial evidence."  *In re Facebook, Inc., PPC Advertising Litig.*, 2012 WL 1253182, at *16

13   (N.D. Cal. Apr. 13, 2012); *In re Google AdWords Litig.*, 2012 WL 28068, at *15 (N.D. Cal. Jan. 5,

14   2012); *Colgan v. Leatherman Tool Group, Inc.*, 135 Cal. App. 4th 663, 698-700 (2006).

15             Aside from Albacore Tuna, Ogden provided no evidence regarding when she purchased

16   the Bumble Bee Products, how many, or how much she paid.  The Bumble Bee Products had

17   unquestionable value to Ogden. She testified that she purchased the products for taste,

18   convenience and/or high levels of Omega-3s (Ogden Dep. 19:21-20:6, 20:18-20, 27:11-18, 30:17-

19   19).  That is exactly what she received.  "The difference between what the plaintiff paid and the

20   value of what the plaintiff received is a proper measure of restitution."  *In re Vioxx Class Cases*,

21   180 Cal. App. 4th 116, 131 (2009) (citation omitted).  "There must be evidence of the actual value

22   of what the plaintiff received."  *Id.*  Given the indisputable facts and the applicable standard,

23   Ogden cannot prove that she is entitled to restitution.

24             Not only does Ogden's request for restitution under the UCL and FAL fail, but so does her

25   cause of action for "Restitution Based on Unjust Enrichment/Quasi-Contract."  This Court

26   recently dismissed a nearly identical claim in another food misbranding case because unjust

27   enrichment is not a cause of action. *Brazil*, 2013 WL 1209955, at *18 (citing cases); *see also Low*

28   *v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1031 (N.D. Cal. 2012) (Koh, J.); *Smith v Ebay Corp.*,

                                              10

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT      Case No. 5:12-cv-01828-LMK

1  2012 WL 27718, at \*9 (N.D. Cal. Jan. 5, 2012); *Johns v. Bayer Corp.*, 2010 WL 476688, at \*6 (S.

2  D. Cal. Feb. 9, 2010).  The Court should reach the same conclusion here.

3      **2.      Ogden Cannot Prove Any Right to Disgorgement**

4      Under the UCL and FAL, "an individual may recover profits unfairly obtained to the

5  extent that these profits represent monies given to the defendant [by plaintiff] or benefits in which

6  the plaintiff has an ownership interest." *Korea Supply*, 29 Cal.4th at 1148.  Ogden cannot seek the

7  remedy of disgorgement because she did not purchase anything directly from Bumble Bee. *See In*

8  *re Napster Inc. Copyright Litig.*, 354 F. Supp. 2d 1113, 1127 (N.D. Cal. 2005) (rejecting claims

9  for disgorgement where counter-defendant did not have possession of funds in which counter-

10  plaintiff had an ownership interest).

11      **3.      Ogden Cannot Obtain an Injunction**

12      Ogden seeks an order to enjoin Bumble Bee "from continuing to market, advertise,

13  distribute, and sell [its] products in the unlawful manner described herein" (AC, *ad damnum*

14  *clause*).  Even if Ogden had standing to sue, injunctive relief is not available because Bumble Bee

15  is in the process of revising the allegedly misbranded labels on the Bumble Bee Products (and all

16  other products with Omega 3 claims) to state the specific types of Omega-3 fatty acids and to

17  provide a disclosure on the front of the packages regarding fat (for the Tuna Salad) and cholesterol

18  (for the Sardines Mediterranean Style) (*see* Mavity Decl., ¶ 5). *Pfizer Inc. v. Superior Court*, 182

19  Cal. App. 4th 622, 631 n.5 (2010); *In re Vioxx*, 180 Cal. App. 4th at 130.  As such, there is no

20  likelihood of future harm to Ogden (or any member of the putative class) from Bumble Bee's sale

21  of the Bumble Bee Products and Ogden cannot obtain injunctive relief.

22  //

23  //

24  //

25  //

26  //

27  //

28  //

11

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT      Case No. 5:12-cv-01828-LMK

1    **V.      CONCLUSION**

2           Ogden has no standing and she is entitled to no remedy. The Court should dismiss her

3    claims with prejudice on summary judgment.

4

     Dated:    August 29, 2013                        Respectfully submitted,
5

6                                                     By: /s/ Forrest A. Hainline III
                                                          Forrest A. Hainline III
7                                                         *fhainline@goodwinprocter.com*
                                                          Patrick S. Thompson (SBN 160804)
8                                                         *pthompson@goodwinprocter.com*
                                                          Robert B. Bader (SBN 233165)
9                                                         *rbader@goodwinprocter.com*
                                                          **GOODWIN PROCTER LLP**
10                                                        Three Embarcadero Center, 24th Floor
                                                          San Francisco, California 94111
11                                                        Tel.:  415.733.6000
                                                          Fax.:  415.677.9041
12
                                                          *Attorneys for Defendant*
13                                                        *BUMBLE BEE FOODS, LLC*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                            12
NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT        Case No. 5:12-cv-01828-LMK

1

**<u>PROOF OF SERVICE</u>**

2

3

4

I further certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on August 29, 2013.

5

6

/s/ Forrest A. Hainline III
Forrest A. Hainline III

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1