1

2

3

4

5

6

7

8              UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10                     SAN JOSE DIVISION

11   TRICIA OGDEN, individually and on behalf of  )   Case No.: 5:12-CV-01828-LHK
     herself of all others similarly situated,    )
12                                                )
                          Plaintiff,              )   ORDER GRANTING IN PART AND
13          v.                                    )   DENYING IN PART DEFENDANT'S
                                                  )   MOTION FOR SUMMARY JUDGMENT
14   BUMBLE BEE FOODS, LLC,                       )
                                                  )
15                        Defendant.              )
                                                  )
16   _____)

17

18          Before the Court is Defendant Bumble Bee Foods, LLC's ("Bumble Bee") Motion for

19   Summary Judgment. ("Mot.") ECF No. 75. Plaintiff Tricia Ogden ("Ogden") opposes the Motion,

20   ("Opp'n") ECF No. 81, and Bumble Bee replies, ("Reply") ECF No. 86. Having considered the

21   submissions of the parties, the relevant law, and the record in this case, the Court GRANTS in part

22   and DENIES in part Defendant's Motion for Summary Judgment.

23   I.     BACKGROUND

24          A.      Factual Background

25          Bumble Bee, a Delaware corporation with its principal place of business in San Diego,

26   California, is "a leading producer of retail seafood products" that sells its "food products to

                                                  1
27   Case No.: 12-CV-01828-LHK
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY
28   JUDGMENT

United States District Court
For the Northern District of California

consumers through grocery and other retail stores throughout the United States and California." ("Amended Complaint" or "AC") ECF No. 14 ¶¶ 15-16. Ogden is a resident of California. *Id.* ¶ 14. Over the four years leading up to the filing of the Original Complaint, Ogden regularly purchased the following Bumble Bee products: (1) Tuna Salad with Crackers; (2) Solid White Albacore in Water;[1] and (3) King Oscar Sardines Mediterranean Style.[2] *Id.* ¶¶ 14, 122; ("Ogden Dep.") ECF No. 81-6 at 25:6-15; 85:13-15; 96:2-8. Ogden spent roughly 30 dollars per month on these products during this time period. ("Ogden Decl.") ECF No. 81-7 ¶ 3.[3]

Ogden alleges that Bumble Bee makes a variety of unlawful, false, and misleading statements about its products, both on the products' labels and on the Bumble Bee and King Oscar websites. AC ¶¶ 4-8. Ogden contends that Bumble Bee's products are "misbranded" as a result. *Id.* ¶ 8. Ogden's specific allegations of misbranding are as follows.

---

[1] Although Ogden testified at her deposition that she purchased the Solid White Albacore in Water product, *see, e.g.*, Ogden Dep. at 85:13-15, Ogden neither mentioned this product in the AC nor sought to amend the AC to include claims related to the Solid White Albacore in Water product. Nevertheless, Bumble Bee's Motion for Summary Judgment does not object to Ogden bringing claims related to the Solid White Albacore in Water product and indeed assumes that such claims are part of Ogden's case. *See, e.g.*, Mot. at 2, 6. Given Bumble Bee's lack of objection to the inclusion of claims based on a product not mentioned in the Amended Complaint, the Court will consider Ogden's claims as they relate to the Solid White Albacore in Water product.

[2] Bumble Bee distributes King Oscar products in the United States. ("Am. Answer") ECF No. 20 ¶ 2.

[3] Bumble Bee objects to Paragraph 3 of the Ogden Declaration on the ground that Ogden's testimony estimating the amount of money she spent on Bumble Bee products violates the Best Evidence Rule. *See* Reply at 10 (citing Fed. R. Evid. 1001 *et seq.*). Bumble Bee contends that Ogden must produce receipts proving her purchases and may not rely on her own recollection regarding how much she spent on Bumble Bee's products.

Bumble Bee is incorrect. The Best Evidence Rule requires production of an original writing, recording, or photograph only when the proffering party seeks to prove the contents of the writing, recording, or photograph. *See, e.g.*, *United States v. Bennett*, 363 F.3d 947, 953 (9th Cir. 2004). The Rule does not apply when a witness has independent knowledge of the events the writing, recording, or photograph describes. *Id.* Because Ogden has independent knowledge of her own grocery purchases, she need not submit receipts documenting those purchases in order to testify about them. Bumble Bee's objection to Paragraph 3 of Ogden's Declaration is DENIED.

Case No.: 12-CV-01828-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### 1.    Omega-3 Nutrient Content Claims

Ogden alleges that Bumble Bee makes unlawful "nutrient content claims" regarding the presence of Omega-3 fatty acids in Bumble Bee products. Opp'n at 2; AC ¶¶ 58-62. Under the Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. §§ 301 *et seq.*, and accompanying regulations promulgated by the Food and Drug Administration ("FDA"), a nutrient content claim is a "claim that expressly or implicitly characterizes the level of a nutrient of the type required to be in nutrition labeling." 21 C.F.R. § 101.13(b); *see also* 21 U.S.C. § 343(r)(1). Such claims must comply with federal regulations. *See* 21 U.S.C. § 343(r); 21 C.F.R. § 101.13. California has expressly adopted the federal requirements for nutrient content claims in Section 110670 of the Sherman Food, Drug, and Cosmetic Law ("Sherman Law"). *See* Cal. Health & Safety Code § 110670 ("Any food is misbranded if its labeling does not conform with the requirements for nutrient content or health claims as set forth in Section 403(r) (21 U.S.C. Sec. 343(r)) of the [FDCA] and the regulations adopted pursuant thereto.").

Ogden contends that each of the three Bumble Bee products she purchased make nutrient content claims regarding Omega-3 fatty acids. Specifically, both the Tuna Salad with Crackers product and the Solid White Albacore in Water product state on their labels that the product is an "Excellent Source Omega-3," while the Sardines Mediterranean Style product states on its label that it is "Rich in Natural Omega-3." *See* ("Bader Decl.") ECF No. 75-2 Exs. B-D. The Omega-3 label statements on the Tuna Salad with Crackers and Solid White Albacore in Water products are accompanied by an asterisk that directs the consumer to a statement listing the specific quantity of Omega-3 present in the product. *See id.* Ex. B (Solid White Albacore in Water "[c]ontains 100 mg of Omega-3 per serving); Ex. C (tuna portion of Tuna Salad with Crackers "[c]ontains 1.25 g of

3

**United States District Court**
For the Northern District of California

Omega-3 per serving," while the crackers portion of Tuna Salad with Crackers "[c]ontains 65 mg of Omega-3 per serving").[4]

Ogden points out that FDA regulations define "excellent source" and "rich in" statements as nutrient content claims and place restrictions on when such claims may appear on a product's label. *See* Opp'n at 2 (citing 21 C.F.R. § 101.54). Ogden argues that Bumble Bee's product labels violate the FDA's restrictions on "excellent source" and "rich in" nutrient content claims in two ways. First, Ogden asserts that because the FDA has not established a "Reference Daily Intake" ("RDI") or "Daily Reference Value" ("DRV") for Omega-3s, Bumble Bee may not state that its products are an excellent source of or are rich in Omega-3s. *See* Opp'n at 2; *see also* 21 C.F.R. § 101.54(b)(1) ("The terms 'high,' 'rich in,' or 'excellent source of' may be used on the label and in the labeling of foods . . . *provided* that the food contains 20 percent or more of the RDI or the DRV per reference amount customarily consumed." (emphasis added)). Second, Ogden asserts that Bumble Bee's Omega-3 statements violate FDA regulations because the statements fail to specify what type of Omega-3 is in the products. *See* Opp'n at 2.

Ogden testified that she read the Omega-3 statements on the Bumble Bee product labels and relied on these statements in deciding to purchase the products. *See, e.g.*, Ogden Dep. at 26:25-27:1 (Ogden purchased Tuna Salad with Crackers because she "was attracted to the fact that it had omega-3 on the front"); *id.* at 102:17-21 ("[Q:] Why was it that you were drawn to the King Oscar sardines Mediterranean style? [A:] Well, it has clearly on the top right-hand corner, 'rich in natural omega-3 . . . .'"). Ogden claims that Bumble Bee's unlawful Omega-3 statements caused her to pay more for Bumble Bee's products than she otherwise would have been willing to pay, and that she would have purchased other, lower-priced products were it not for Bumble Bee's Omega-3 statements. Ogden Decl. ¶ 3; AC ¶ 124.

---

[4] The Omega-3 statement on the Sardines Mediterranean Style Product is also accompanied by an asterisk, but based on the product label images the parties provided, this asterisk does not appear to refer the consumer to any additional statement on the product's packaging. *See* Bader Decl. Ex. D.

Case No.: 12-CV-01828-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**United States District Court**
For the Northern District of California

## 2.    Front-of-Package Disclosure Claims

Ogden further alleges that Bumble Bee's Omega-3 statements were unlawful because the statements were not accompanied by a disclosure that Bumble Bee's products contained high levels of fat or cholesterol. Opp'n at 2; AC ¶ 67. FDA regulations require that if a product bearing a nutrient content claim on its label contains more than "13.0 g of fat, 4.0 g of saturated fat, 60 milligrams (mg) of cholesterol, or 480 mg of sodium . . . per labeled serving," then the product label must also include the disclosure, "[s]ee nutrition information for __ content." 21 C.F.R. § 101.13(h)(1). This disclosure must appear immediately adjacent to the nutrient content claim. 21 C.F.R. § 101.13(h)(4)(ii). California's Sherman Law incorporates this labeling requirement. *See* Cal. Health & Safety Code § 110670.

Two of the three Bumble Bee products Ogden purchased contain levels of fat or cholesterol that trigger the above-described disclosure requirement. The tuna portion of the Tuna Salad with Crackers product contains 18 grams of fat per serving, while the Sardines Mediterranean Style product contains 110 milligrams of cholesterol per serving. *See* Bader Decl. Exs. C-D. In spite of containing high levels of fat or cholesterol, neither the Tuna Salad with Crackers label nor the Sardines Mediterranean Style label contains the required disclosure statement. *See id.*

Ogden conceded in her deposition that she does not ordinarily read the detailed nutrition information panels on the food products she purchases. *See* Ogden Dep. at 60:16-21 ("[Q:] Do you read the nutrition facts on the reverse label for any of the products that you consume? [A:] I don't buy a lot of packaged products, so I don't—I—I don't check that much labeling on the side . . . ."); *id.* at 61:2-20 ("[Q:] Do you recall any circumstances where you looked at the back label of any product that you've purchased to review the nutrition facts associated with that product? [A:] The nutrition facts? Probably not. [Q:] For this product—we've talked about the nutrition facts related to the tuna salad. Did you review any of the nutrition facts related to the crackers? [A:] Not in initially looking at the product, no. [Q:] Did you at any time before buying the products review the

Case No.: 12-CV-01828-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

nutrition facts associated with crackers? [A:] Not really—I don't think so. I don't really know. I'm mainly going—like I say, you—you—I'm a busy person. I go on a first impression. If it looks good, I'll try it. I'll take it."). Ogden also testified, however, that she purchased both the Tuna Salad with Crackers and the Sardines Mediterranean Style products because of the unqualified Omega-3 statements on the products' labels and that she would not have purchased either product had she been aware that the products contained high levels of fat or cholesterol. *See id.* at 73:16-21 ("[Tuna Salad with Crackers] says 'an excellent source of omega-3' which in my mind, it says, 'This is a heart-healthy thing to eat.' I didn't know at the time that it had a large fat content and sodium content in this packaged food. If I had known that, I wouldn't have purchased it."); *id.* at 97:13-18 ("Again, [Sardines Mediterranean Style] says 'rich in natural Omega-3s,' and I understand that it doesn't contain enough to put the word 'rich in,' and that it has in that oil a large and dangerous levels of cholesterol which would again negate the benefits of the omega-3."); *id.* at 102:17-21 (Ogden purchased Sardines Mediterranean Style because of the Omega-3 statement).

### 3.    Vitamin A and Iron Nutrient Content Claims

Ogden also contends that Bumble Bee makes unlawful nutrient content claims regarding the presence of Vitamin A and Iron in its products. Opp'n at 2; AC ¶ 48. Specifically, Ogden alleges that Bumble Bee claims that the Sardines Mediterranean Style product is a "rich and natural source" of Vitamin A and is "naturally rich" in Iron. AC ¶ 48. Such claims are unlawful, Ogden asserts, because "rich in" claims require that a product contain 20% or more of the RDI or DRV for the nutrient for which the "rich in" claim is made, and the Sardines Mediterranean Style product provides only 8% of the RDI or DRV for Vitamin A and 4% of the RDI or DRV for Iron. *Id.*; *see also* 21 C.F.R. § 101.54(b)(1).

Unlike the Omega-3 statements discussed above, Bumble Bee's statements about the Vitamin A and Iron content of the Sardines Mediterranean Style product do not appear on the product's label. *See* Bader Decl. Ex. D. Rather, Ogden alleges that Bumble Bee makes these claims

6

United States District Court
For the Northern District of California

on the www.kingoscar.com website, the address of which appears on the Sardines Mediterranean Style product's label. *See* Opp'n at 9; AC ¶ 48. Ogden has not, however, submitted any evidence of the content of the www.kingoscar.com website that would corroborate her assertions.[5] In addition, Ogden does not claim to have visited the www.kingoscar.com website prior to purchasing the Sardines Mediterranean Style product, nor does she claim to have relied on any statements regarding Vitamin A or Iron in deciding to purchase the Sardines Mediterranean Style product. *See* Ogden Dep. at 106:2-7 ("[Q:] Do you recall looking at the King Oscar webpage before buying any King Oscar sardines Mediterranean style? [A:] Before buying them at all? [Q:] Yes. [A:] No.").

### 4.  Health/Drug Claims

Finally, Ogden alleges that Bumble Bee makes various unlawful "health" claims, both on the www.kingoscar.com website and on the Solid White Albacore in Water product's label. Opp'n at 7, 9; AC ¶¶ 82, 84. Under FDA regulations, a "health claim" is defined as:

> any claim made on the label or in labeling of a food . . . that expressly or by implication, including 'third party' references, written statements (e.g., a brand name including a term such as "heart"), symbols (e.g., a heart symbol), or vignettes, characterizes the relationship of any substance to a disease or health-related condition. Implied health claims include those statements, symbols, vignettes, or other forms of communication that suggest, within the context in which they are presented, that a relationship exists between the presence or level of a substance in the food and a disease or health-related condition.

21 C.F.R. § 101.14(a)(1). Ogden contends that federal law requires that health claims must be "limited to claims about disease risk reduction, and cannot be claims about the diagnosis, cure, mitigation, or treatment of disease." AC ¶ 76. According to Ogden, any claim that a product may diagnose, cure, mitigate, or treat disease is a "drug claim" that may not appear on food. *Id.* ¶ 77 (citing 21 U.S.C. § 321(g)(1)(D)).

---

[5] The Court notes that the current version of the www.kingoscar.com website does not appear to make any claims regarding the Vitamin A or Iron content of the Sardines Mediterranean Style product. *See* http://www.kingoscar.com/products-by-market/usa/usa-sardines/brisling-sardines-mediterranean-style-2.html (U.S. product page for Sardines Mediterranean Style).

7

Ogden argues that various claims on the www.kingoscar.com website are improper drug claims. Opp'n at 8; AC ¶¶ 82, 84. Ogden further argues that such claims were improper insofar as they related to the Sardines Mediterranean Style product, because federal law prohibits the use of health claims for products containing at least "13.0 grams (g) of fat, 4.0 g of saturated fat, 60 milligrams (mg) of cholesterol, or 480 mg of sodium . . . per label serving size." AC ¶ 90; 21 C.F.R. § 101.14(a)(4). As discussed above, however, Ogden has neither submitted evidence of the content of any claims made on the www.kingoscar.com website, nor provided evidence that she visited this website and viewed the purported drug claims prior to purchasing the Sardines Mediterranean Style product. *See supra* Part I.A.3.

Ogden also suggests that the heart symbol appearing on the label of the Solid White Albacore in Water product is an unlawful health claim. *See* Opp'n at 7. Ogden does not explain why she believes Bumble Bee's use of the heart symbol on this product was unlawful, though she does state that she purchased the Solid White Albacore in Water product, in part, because of the heart symbol on the product's label. *See* Ogden Dep. at 85:17-86:23.

Ogden contends that by manufacturing, advertising, distributing, and selling misbranded products, Bumble Bee has violated California Health & Safety Code Sections 109885, 110390, 110395, 110398, 110400, 110403, 110660, 110665, 110670, 110705, 110755, 110760, 110765, and 110770. AC ¶¶ 103-114. In addition, Ogden asserts that Bumble Bee has violated the standards set by 21 C.F.R. §§ 101.13, 101.14, 101.54, and 101.65, and by 21 U.S.C. §§ 321(g)(1)(B) and 343, all of which have been adopted by reference into the Sherman Law. *Id.* ¶¶ 115-119. Consequently, the AC alleges the following causes of action: (1) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*, for unlawful, unfair, and fraudulent business acts and practices (counts 1, 2, and 3); (2) violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500 *et seq.*, for misleading, deceptive, and untrue advertising (counts 4 and 5); (3) violation of the Consumers Legal Remedies Act

8

United States District Court
For the Northern District of California

("CLRA"), Cal. Civ. Code §§ 1750 *et seq.* (count 6); (4) restitution based on "Unjust Enrichment/Quasi-Contract" (count 7); (5) violation of the Song-Beverly Consumer Warranty Act, Cal. Civ. Code §§ 1790 *et seq.* (count 8); and (6) violation of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301 *et seq.* (count 9).

**B.     Procedural Background**

Ogden filed her Original Complaint against Bumble Bee on April 12, 2012. ECF No. 1. Bumble Bee answered on July 20, 2012. ("Answer") ECF No. 13. On August 10, 2012, Ogden filed an Amended Complaint. ECF No. 14. Bumble Bee answered the Amended Complaint on September 20, 2012. Am. Answer.

Ogden filed a Motion to Compel Responses to Discovery on February 12, 2013. ECF No. 33. Bumble Bee responded on February 26, 2013, ECF No. 39, and Ogden replied on March 5, 2013, ECF No. 40. On April 16, 2013, Magistrate Judge Grewal granted in part Ogden's Motion to Compel. ECF No. 52.

Ogden filed a Motion for Class Certification on May 9, 2013. ("Class Cert. Mot.") ECF No. 59. On August 29, 2013, Bumble Bee filed an Opposition to Ogden's Class Certification Motion. ECF No. 76. Ogden filed a Reply in Support of Class Certification on October 18, 2013. ECF No. 83.

Bumble Bee filed the instant Motion for Summary Judgment on August 29, 2013. ECF No. 75. Ogden filed her Opposition on October 18, 2013, ECF No. 81, and Bumble Bee filed its Reply on November 8, 2013. ECF No. 86. Ogden has also filed an objection to evidence cited in support of Bumble Bee's Motion for Summary Judgment, ECF No. 82, as well as an objection to evidence cited in Bumble Bee's Reply, ECF No. 84.

**II.     LEGAL STANDARDS**

**A.     Summary Judgment**

Summary judgment is proper where the pleadings, discovery, and affidavits show that there

9

is "no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.*

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits that demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings, and by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial. *See Anderson*, 477 U.S. at 250. If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." *Celotex*, 477 U.S. at 323 (internal quotation marks omitted). All material cited to support or dispute a fact must be admissible in evidence. Fed. R. Civ. P. 56(c)(2).

At the summary judgment stage, the Court must view the evidence in the light most favorable to the nonmoving party and "all reasonable inferences that may be drawn from the facts placed before the court must be drawn" in favor of the opposing party. *Stegall v. Citadel Broad. Co.*, 350 F.3d 1061, 1065 (9th Cir. 2003) (internal quotation marks omitted). If evidence produced by the moving party conflicts with evidence produced by the nonmoving party, a court must assume the truth of the evidence set forth by the nonmoving party with respect to that fact. *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir.1999). However, "[b]ald assertions that genuine issues of material fact exist are insufficient." *See Galen v. Cnty. of L.A.*, 477 F.3d 652, 658 (9th Cir. 2007); *see also Day v. Sears Holdings Corp.*, 930 F. Supp. 2d 1146, 1159 (C.D. Cal. 2013) ("Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment."). Further, a motion for summary judgment may not

10

United States District Court
For the Northern District of California

1   be defeated by evidence that is "merely colorable" or "not significantly probative." *Anderson*, 477

2   U.S. at 249-50; *see also Hardage v. CBS Broad., Inc.*, 427 F.3d 1177, 1183 (9th Cir. 2005) (same).

3   **III.     DISCUSSION**

4         Bumble Bee moves for summary judgment on five grounds. Specifically, Bumble Bee

5   asserts that: (1) Ogden lacks statutory standing under the UCL, FAL, and CLRA; (2) Ogden "lacks

6   standing to enforce the [FDCA] and the Sherman Law"; (3) Ogden is not entitled to restitution,

7   disgorgement, or an injunction under the UCL, FAL, or CLRA; (4) Ogden is not entitled to relief

8   under the Song-Beverly Consumer Warranty Act, Cal. Civ. Code §§ 1790 *et seq.*, or the

9   Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301 *et seq.*; and (5) Ogden is not entitled to bring a

10  freestanding claim for "Unjust Enrichment/Quasi-Contract" under California law. Mot. at v-vi. The

11  Court addresses each of Bumble Bee's arguments in turn.

12        **A.     Statutory Standing Under the UCL, FAL, and CLRA**

13        Bumble Bee first asserts that Ogden lacks statutory standing to pursue her UCL, FAL, and

14  CLRA claims. Mot. at 6-7. According to Bumble Bee, Ogden has not demonstrated that a genuine

15  dispute of material fact exists regarding whether Ogden purchased any Bumble Bee products "as a

16  result of any false or misleading statement" by Bumble Bee. *Id.* at 6. As discussed below, while the

17  Court agrees that Ogden has failed to establish a genuine issue of material fact as to her standing to

18  pursue the Vitamin A and Iron Nutrient Content Claims or Health/Drug Claims, the Court finds

19  that genuine issues of material fact exist with respect to Ogden's standing to pursue the Omega-3

20  Nutrient Content Claims and Front-of-Package Disclosure Claims.

21        **1.     Legal Framework**

22        The CLRA, UCL, and FAL all require a plaintiff to demonstrate standing. To have standing

23  under the CLRA, a plaintiff must allege that she relied on the defendant's alleged

24  misrepresentations and that she suffered injury as a result. *See, e.g.*, *Durell v. Sharp Healthcare*,

25  183 Cal. App. 4th 1350, 1367 (2010) (plaintiff must have "relied on a[] representation by"

26                                              11

27  Case No.: 12-CV-01828-LHK
    ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY
28  JUDGMENT

**United States District Court**
For the Northern District of California

defendant in order to have standing to bring CLRA claim based on a misrepresentation); *Aron v. U-Haul Co.*, 143 Cal. App. 4th 796, 802 (2006) ("To have standing to assert a claim under the CLRA, a plaintiff must have suffer[ed] any damage as a result of the . . . practice declared to be unlawful." (alterations in original) (internal quotation marks omitted)).

Likewise, to establish standing under the UCL or FAL, a plaintiff must demonstrate that she "suffered injury in fact and [] lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204; *see also id.* § 17535 (imposing an identical standing requirement for FAL actions). Interpreting this statutory language—which California voters added to the UCL and FAL in 2004 through the passage of Proposition 64, *see In re Tobacco II Cases*, 46 Cal. 4th 298, 314 (2009)—in relation to the UCL, California courts have held that when the "unfair competition" underlying a plaintiff's UCL claim consists of a defendant's misrepresentation, a plaintiff must have actually relied on the misrepresentation, and suffered economic injury as a result of that reliance, in order to have standing to sue. *See id.* at 326.

While the California Supreme Court first announced this actual reliance requirement with regard to claims brought under the UCL's fraud prong, *see id.* ("[W]e conclude that [Section 17204, as amended by Proposition 64] imposes an actual reliance requirement on plaintiffs prosecuting a private enforcement action under the UCL's fraud prong."), California courts have subsequently extended the actual reliance requirement to claims brought under the UCL's unlawful prong to the extent "the predicate unlawful conduct is based on misrepresentations." *Durell*, 183 Cal. App. 4th at 1355; *accord Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 326 (2011). Moreover, in *Kwikset*, the California Supreme Court indicated that the actual reliance requirement applies *whenever* a UCL action is predicated on misrepresentations. 51 Cal. 4th at 326 & n.9 ("The theory of the case is that [defendant] engaged in misrepresentations and deceived consumers. Thus, our remarks in *In re Tobacco II Cases* . . . concerning the cause requirement in deception cases, are apposite." (citation omitted)). Thus, the Court concludes that the actual reliance requirement also

12

applies to claims under the UCL's unfair prong to the extent such claims are based on a defendant's misrepresentations. *See In re Actimmune Mktg. Litig.*, No. 08-2376, 2010 WL 3463491, at *8 (N.D. Cal. Sept. 1, 2010) (holding "that a plaintiff must plead 'actual reliance,' even if their [*sic*] claim arises under the unlawful or unfair prongs, so long as the pleadings assert a cause of action grounded in misrepresentation or deception."), *aff'd*, 464 F. App'x 651 (9th Cir. 2011); *see also Kane v. Chobani, Inc.*, No. 12-2425, 2013 WL 5289253, at *6 (N.D. Cal. Sept. 19, 2013) (same).

Here, the essence of Ogden's claims under the UCL's unlawful, unfair, and fraud prongs is that Bumble Bee deceived Ogden, causing her to pay a premium for Bumble Bee's products that she would not have paid were it not for Bumble Bee's unlawful and misleading nutrient content and health claims. *See, e.g.*, Opp'n at 11 ("Plaintiff attached importance to and reasonably relied on Bumble Bee's Omega-3, health, and other label statements. Defendant's label statements were prohibited from making *any* Omega-3 claim . . . . These statements are misleading *per se*."); AC ¶ 131 ("Defendant's labeling, advertising and marketing as alleged herein are false and misleading and were designed to increase sales of the products at issue."). Accordingly, Ogden must demonstrate actual reliance in order to establish standing to pursue her UCL claims. *Accord Figy v. Amy's Kitchen, Inc.*, No. 13-3816, 2013 WL 6169503, at *3 (N.D. Cal. Nov. 25, 2013) (plaintiff must show actual reliance under the UCL when the underlying claim is one for misrepresentation); *Brazil v. Dole Food Co.* (*"Brazil II"*), No. 12-1831, 2013 WL 5312418, at *8-9 (N.D. Cal. Sept. 23, 2013) (same).

A showing of actual reliance under the UCL requires a plaintiff to establish that "the defendant's misrepresentation or nondisclosure was an immediate cause of the plaintiff's injury-producing conduct." *Tobacco II*, 46 Cal. 4th at 326 (internal quotation marks omitted). "A plaintiff may establish that the defendant's misrepresentation is an immediate cause of the plaintiff's conduct by showing that in its absence the plaintiff in all reasonable probability would not have

Case No.: 12-CV-01828-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

engaged in the injury-producing conduct." *Id.* (internal quotation marks omitted). While a plaintiff need not demonstrate that the defendant's misrepresentations were "the sole or even the predominant or decisive factor influencing his conduct," the misrepresentations must have "played a substantial part" in the plaintiff's decisionmaking. *Id*. (internal quotation marks omitted). Further, "a presumption, or at least an inference, of reliance arises wherever there is a showing that a misrepresentation was material." *Id*. at 327.

### 2.    Analysis

#### a.    Omega-3 Nutrient Content Claims

Bumble Bee contends that Ogden cannot demonstrate that she relied on a Bumble Bee misrepresentation concerning Omega-3s in deciding to purchase Bumble Bee's products because the Omega-3 statements on the Tuna Salad with Crackers, Solid White Albacore in Water, and Sardines Mediterranean Style products were authorized by federal law. Mot. at 3-4, 6. In support of its argument, Bumble Bee points to a provision of Food and Drug Administration Modernization Act of 1997 ("FDAMA"), Pub. L. No. 105-115, 111 Stat. 2296, which amended the FDCA by, among other things, creating a procedure by which food manufacturers and distributors may petition the FDA for permission to use nutrient content claims that the FDA has not previously authorized. 21 U.S.C. § 343(r)(2)(G).

Under Section 343(r)(2)(G), a party may seek to use a novel nutrient content claim on a product label if "a scientific body of the United States Government with official responsibility for public health protection or research directly relating to human nutrition . . . or the National Academy of Sciences or any of its subdivisions has published an authoritative statement . . . which identifies the nutrient level to which the claim refers." 21 U.S.C. § 343(r)(2)(G)(i). The party seeking to use the novel nutrient content claim must submit to the FDA:

> (I)    a notice of the claim, which shall include the exact words used in the claim and shall include a concise description of the basis upon which such person relied for determining that the requirements of subclause (i) have been satisfied,

14

United States District Court
For the Northern District of California

(II)   a copy of the statement referred to in subclause (i) upon which such person relied in making the claim, and

(III)   a balanced representation of the scientific literature relating to the nutrient level to which the claim refers

21 U.S.C. § 343(r)(2)(G)(ii). If the FDA does not object to the novel nutrient content claim within 120 days, the claim is deemed authorized, at least until such time as the FDA issues a superseding regulation or a district court "determine[s] that the requirements of clause (G) have not been met" in an enforcement proceeding. 21 U.S.C. § 343(r)(2)(G)-(H).

In 2005, a different canned seafood manufacturer, Ocean Nutrition Canada, Ltd. ("ONC"), submitted a notification to the FDA under Section 343(r)(2)(G) that sought authorization for the following claim:

Excellent source of Omega-3 EPA and DHA ("High in Omega-3 IPA and DHA;" "Rich in Omega-3 EPA and DHA"). Contains ___ mg of EPA and DHA combined per serving, which is ___% of the 160 mg Daily Value for a combination of EPA and DHA. [Products must contain a combined total of at least 32 mg of EPA and DHA to qualify for this claim.]

("ONC Nutrient Content Claim Notification") ECF No. 75-6.[6] The FDA did not object to the Nutrient Content Claim Notification within 120 days. *See* http://www.regulations.gov/#!docket-Detail;D=FDA-2006-P-0224 (FDA docket for the ONC Nutrient Content Claim Notification).[7]

---

[6] Bumble Bee requests that the Court take judicial notice of the ONC Nutrient Content Claim Notification, as well as an article taken from the National Institutes of Health website entitled "Omega-3 Fatty Acids and Health." ("Request for Judicial Notice") ECF No. 75-5 ¶¶ 1-2. Both these documents come from U.S. government agency websites, and courts routinely take judicial notice of information contained on such websites. *See, e.g.*, *Paralyzed Veterans of Am. v. McPherson*, No. 06-4670, 2008 WL 4183981, at *5 (N.D. Cal. Sept. 9, 2008) (citing cases). Accordingly, the Court GRANTS Bumble Bee's Request for Judicial Notice as to these two documents.

[7] In 2007, the FDA responded to the ONC Nutrient Content Claim Notification, as well as two similar notifications, by issuing a proposed rule that would have declared the ONC nutrient content claim unlawful. *See* Food Labeling: Nutrient Content Claims; Alpha-Linolenic Acid, Eicosapentaenoic Acid, and Docosahexaenoic Acid Omega-3 Fatty Acids, 72 Fed. Reg. 66103-01 (proposed Nov. 27, 2007) (to be codified at 21 C.F.R. Pt. 101). The proposed rule never took effect, however, and thus ONC's nutrient content claim remains authorized to date. *See* 21 U.S.C. § 343(r)(2)(H)(i).

15

United States District Court
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Bumble Bee contends that the ONC Nutrient Content Claim Notification rendered its own Omega-3 statements lawful. Mot. at 4. The Court is not persuaded. The language of the ONC Nutrient Content Claim Notification is materially different from the Omega-3 statements that appear on Bumble Bee's products, in that the ONC statement identifies the specific type of Omega-3 fatty acids present in the product, whereas the Bumble Bee Omega-3 statements do not. Bumble Bee offers no support for the proposition that a food manufacturer may rely on a Section 343(r)(2)(G) notification submitted by one manufacturer to place a materially different nutrient content claim on its own product labels. Indeed, such a conclusion would appear to be inconsistent with the plain language of Section 343(r)(2)(G), which requires a party seeking authorization of a novel nutrient content claim to "include the *exact* words used in the claim" when submitting the nutrient content claim notification. 21 U.S.C. § 343(r)(2)(G)(ii)(I) (emphasis added). In the absence of any authority supporting Bumble Bee's argument that its Omega-3 statements were lawful solely because the FDA failed to object to the materially different claim in the ONC Nutrient Content Claim Notification, the Court cannot conclude that Bumble Bee's Omega-3 statements were necessarily lawful.

If Bumble Bee's Omega-3 statements were not authorized by FDA regulations, then the statements should not have appeared on the products' labels at all. *See* 21 C.F.R. § 101.13(b) ("A claim that expressly or implicitly characterizes the level of a nutrient . . . (that is, a nutrient content claim) may not be made on the label or in labeling of foods unless the claim is made in accordance with this regulation and with [other] applicable regulations."). Ogden indisputably relied on the presence of the Omega-3 statements on Bumble Bee's products in deciding to purchase those products. *See, e.g.*, Ogden Dep. at 26:25-27:1, 102:17-21; Mot. at 6 (acknowledging that Ogden bought Bumble Bee products "because of taste, convenience, and Omega-3 statements on the label"). Were it not for the presence of the Omega-3 statements, which Ogden contends Bumble

16

Bee was prohibited from making under both federal and California law,[8] Ogden would either not have purchased Bumble Bee's products or would not have been willing to pay as much for the products as she did. Ogden Decl. ¶ 3; *see also Kwikset*, 51 Cal. 4th at 323 ("There are innumerable ways in which economic injury from unfair competition may be shown. A plaintiff may (1) surrender in a transaction more, or acquire in a transaction less, than he or she otherwise would have . . . ."). With respect to the Omega-3 Nutrient Content Claims, Ogden has therefore identified Bumble Bee misrepresentations and provided evidence that she saw these misrepresentations, relied on them "in substantial part" in purchasing Bumble Bee's products, and suffered economic harm as a result. *Tobacco II*, 46 Cal. 4th at 326. This is sufficient to create a genuine issue of material fact over whether Ogden has statutory standing to pursue her UCL, FAL, and CLRA claims with regard to the Omega-3 Nutrient Content Claims. *See id.*; *see also Kwikset*, 51 Cal 4th at 326; *Durell*, 183 Cal. App. at 1367.

### b.    Front-of-Package Disclosure Claims

Bumble Bee further contends that Ogden lacks statutory standing to pursue UCL, FAL, and CLRA claims arising out of Bumble Bee's failure to accompany the Omega-3 statements on its Tuna Salad with Crackers and Sardines Mediterranean Style product labels with an FDA-mandated disclosure statement directing consumers to check the products' nutrition information panels for information regarding fat or cholesterol content. Mot. at 7. Such disclosures would not have put Ogden on notice of the fat or cholesterol contents of these products, Bumble Bee argues, because Ogden concedes that she does not ordinarily read the nutrition information panel on the back of a product's packaging. *Id.*; *see also, e.g.*, Ogden Dep. at 109:8-10 ("As I said, prior to this lawsuit, I never really looked at the back of labels."). From Ogden's general disregard for back-of-package

---

[8] Although the Court does not conclude, at this point, that Bumble Bee's Omega-3 statements were unlawful, the Court notes that Bumble Bee has not identified, and the Court has not found, any other statute, regulation, or governing authority that indicates that Bumble Bee's Omega-3 statements complied with federal and state labeling requirements.

Case No.: 12-CV-01828-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

1    nutrition information, Bumble Bee infers that Ogden would not have checked the nutrition

2    information panel for information regarding fat or cholesterol content even if the FDA-required

3    disclaimer had been present on the front of the product. Bumble Bee then reasons that if Ogden

4    would not have read the nutrition information panel in any event, she could not have suffered

5    injury as a result of the disclaimers' absence. Mot. at 7.[9]

6        The Court is not convinced that Ogden has failed to demonstrate the existence of genuine

7    issue of material fact regarding whether she relied on the absence of FDA-required disclosure

8    statements about fat or cholesterol when deciding to purchase the Tuna Salad with Crackers and

9    Sardines Mediterranean Style products. Critically, Ogden never once stated in her deposition that

10   she would not have examined the nutrition facts on Bumble Bee's products had the FDA-required

11   disclosure statements been present. Bumble Bee's contention that Ogden could not have relied on

12

13   [9] Bumble Bee also asserts in passing in its Reply that consumers in general are indifferent to
     nutrition information on a food product's packaging. Reply at 6. While this statement would appear
14   to support an argument that "no reasonable consumer" would have been misled by Bumble Bee's
     failure to include the FDA-required fat and cholesterol disclosures on its packaging, the Court
15   notes that whether a "reasonable consumer" would have been misled by a defendant's
     misrepresentation is a substantive element of UCL, FAL, and CLRA claims, rather than a statutory
16   standing requirement. *See Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008).
     Bumble Bee has not moved for summary judgment on the ground that Ogden cannot meet the
17   substantive elements of a UCL, FAL, or CLRA claim, however, and thus the Court will not
     consider Bumble Bee's passing reference to the reasonable consumer test.
18       Nevertheless, the Court notes that whether a reasonable consumer would have been misled
     by a defendant's misrepresentation is "generally a question of fact which requires consideration
19   and weighing of evidence from both sides." *Linear Tech. Corp. v. Applied Materials, Inc.*, 152 Cal.
     App. 4th 115, 134-35 (2007) (internal quotation marks omitted). As both sides here have presented
20   evidence that Bumble Bee's failure to include FDA-required disclosures on its products either was
     or was not misleading to a reasonable consumer, the Court finds that there is a genuine dispute of
21   material fact on this issue. *Compare* Ogden Dep. at 60:16-21, 61:2-20, 109:8-12 (knowing the fat
     or cholesterol content of food would have influenced Ogden's purchasing decisions), *and* ("Hayes
22   Dep.") ECF No. 81-2 at 93:16-94:19 (Bumble Bee marketing representative acknowledging that
     Bumble Bee views statements on the front of its labels as important), *and* ECF No. 81-5 (statement
23   of Steven Mavity, Bumble Bee Vice President of Technical Services and Corporate Quality, in
     Bumble Bee Executive Committee Meeting Minutes that "[m]y suggestion [for label statements
24   regarding Omega-3s] is to push the envelope as FDA doesn't have a track record of challenging
     anything"), *with* ("Wind Rep.") ECF No. 76-3 at 1 (Bumble Bee expert report concluding that
25   consumers do not care about fat or cholesterol content in deciding whether to purchase canned
     seafood).

26                                              18
27   Case No.: 12-CV-01828-LHK
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY
28   JUDGMENT

the absence of these disclosure statements in deciding to purchase Bumble Bee's products therefore rests on an inference Bumble Bee chooses to draw from Ogden's testimony, and not on the testimony itself. More precisely, Bumble Bee infers that because Ogden does not generally read the nutrition information panel on food products, the front-of-package disclosure statements would not have induced her to do so. But this inference does not necessarily follow. While Ogden testified that she does not ordinarily read nutrition information on the back of a product's packaging, *see, e.g.*, Ogden Dep. at 60:16-21, 61:2-20, 109:8-10, Ogden did not state that she would not have checked the back of Bumble Bee's packages had she seen a disclaimer on the front of the packages directing her to do so. Moreover, Ogden testified that she was concerned about high levels of fat and cholesterol in food and that she would not have purchased the Tuna Salad with Crackers or Sardines Mediterranean Style products had she known how much fat or cholesterol the products contained. *See, e.g.*, *id.* at 73:16-21 ("[Tuna Salad with Crackers] says 'an excellent source of omega-3' which in my mind, it says, 'This is a heart-healthy thing to eat.' I didn't know at the time that it had a large fat content and sodium content in this packaged food. If I had known that, I wouldn't have purchased it."); *id.* at 97:13-18 ("Again, [Sardines Mediterranean Style] says 'rich in natural Omega-3s,' and I understand that it doesn't contain enough to put the word 'rich in,' and that it has in that oil a large and dangerous levels of cholesterol which would again negate the benefits of the omega-3."). Accordingly, while it may be reasonable to infer that Ogden would not have read the nutrition information panel on Bumble Bee's products even if the FDA-required disclosures had been present, it is equally reasonable to infer that the presence of disclosures regarding fat or cholesterol would have alerted Ogden to the possibility that the products were not necessarily "heart healthy," and that Ogden would subsequently have checked the back of the packages for the fat or cholesterol content and foregone purchasing the products as a result. Indeed, the inference that favors Ogden may even be stronger than the inference that favors Bumble Bee. The very point of 21 C.F.R. § 101.13(h)(1)'s requirement that products containing sufficiently high

19

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1    levels of fat, saturated fat, cholesterol, and/or sodium include the disclaimer, "See nutrition

2    information for __ content" appears to be to give consumers extra encouragement to read the

3    nutrition panel. Moreover, the FDA clearly views front-of-package statements as critical in

4    informing consumers about the nutritional profiles of packaged foods. *See* FDA, *Guidance for*

5    *Industry: Letter Regarding Point of Purchase Food Labeling* (Oct. 2009), *available at*

6    http://www.fda.gov/Food/GuidanceRegulation/GuidanceDocumentsRegulatoryInformation/Labelin

7    gNutrition/ucm187208 .htm.

8            On a motion for summary judgment, the Court must draw all reasonable inferences in favor

9    of the nonmoving party. *See Stegall*, 350 F.3d at 1065. Thus, even though Bumble Bee's argument

10   regarding Ogden's standing to pursue her Front-of-Package Disclosure Claims rests on a possible

11   inference from Ogden's testimony, the fact that one can draw other reasonable inferences from

12   Ogden's testimony that favor Ogden precludes an award of summary judgment on this ground.

13           Bumble Bee cites numerous cases in support of its claim that Ogden cannot claim to have

14   relied on the omission of FDA-required disclosure statements on Bumble Bee's product labels. *See*

15   Mot. at 7; Reply at 6. None of these cases is apposite. Initially, all but two relate to whether the

16   plaintiff has pleaded sufficient facts to state a claim for substantive relief under the UCL, FAL,

17   and/or CLRA, not to whether the plaintiff has *standing* to pursue such claims. As noted above, *see*

18   *supra* note 9, these issues are distinct. Of the two cases that purportedly address standing, one, *Reid*

19   *v. Johnson & Johnson*, No. 11-1310, 2012 WL 4108114, at *2, 4 (S.D. Cal. Sept. 18, 2012),

20   appears to misapprehend the distinction between statutory standing—which requires a plaintiff to

21   demonstrate that the defendant made a misrepresentation, that the plaintiff relied on this

22   misrepresentation, and that she suffered injury as a result, *see supra* Part III.A.1—and the

23   substantive elements of UCL, FAL, and CLRA claims—which require, among other things, a

24   showing that a defendant's unlawful conduct was likely to deceive a reasonable consumer, *see*

25   *Williams*, 552 F.3d at 938. Although the court in *Reid* stated that it was dismissing the plaintiff's

26                                                        20

27   Case No.: 12-CV-01828-LHK
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY
28   JUDGMENT

United States District Court
For the Northern District of California

1    claims on standing grounds due to the plaintiff's failure to adequately plead that a reasonable

2    consumer would be deceived by the alleged misrepresentations, the sole case the court cited in

3    support of the proposition that the reasonable consumer test has any relevance to statutory standing

4    does not mention standing and was clearly limited to the merits of the plaintiff's UCL, FAL, and

5    CLRA claims. *See Consumer Advocates v. Echostar Satellite Corp.*, 113 Cal. App. 4th 1351

6    (2003).[10]

7          The remaining case that addresses standing is *Simpson v. California Pizza Kitchen, Inc.*,

8    No. 13-164, 2013 WL 5718479, at *4 (S.D. Cal. Oct. 1, 2013). *Simpson* addresses only Article III

9    standing, however, which is not at issue here.[11] Moreover, *Simpson* relies on a "benefit-of-the-

10   bargain" rationale—namely, that a plaintiff who purchases and consumes a food product has

11   suffered no injury because she received a benefit from consuming the product, *see id.*—that is

12   inconsistent with the California Supreme Court's admonition that a plaintiff may suffer cognizable

13   injury so long as she paid more for the product because of the defendant's misrepresentations than

14   she otherwise would have. *See Kwikset*, 51 Cal. 4th at 329 ("For each consumer who relies on the

15   truth and accuracy of a label and is deceived by misrepresentations into making a purchase, the

16   economic harm is the same: the consumer has purchased a product that he or she *paid more for*

17   than he or she otherwise might have been willing to pay if the product had been labeled accurately.

18   This economic harm—the loss of real dollars from a consumer's pocket—is the same whether or

19   not a court might objectively view the products as functionally equivalent."). The Court finds that

20   the cases Bumble Bee cites in support of its argument that Ogden lacks standing to pursue her

21

22   _____
     [10] Indeed, *Consumer Advocates* was decided before Proposition 64 added the current statutory
23   standing requirements to the UCL and FAL.
     [11] Bumble Bee has not challenged Ogden's standing under Article III. While this Court has an
24   independent duty to ensure that it has subject matter jurisdiction, *see, e.g.*, *Augustine v. United
     States*, 704 F.2d 1074, 1077 (9th Cir. 1983), the Court finds that Ogden has sufficiently
25   demonstrated that she has Article III standing to pursue her Omega-3 and Front-of-Package
     Disclosure Claims for the same reasons that she has statutory standing to pursue these claims.

26                                                    21

27   Case No.: 12-CV-01828-LHK
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY
28   JUDGMENT

Front-of-Package Disclosure Claims are neither relevant nor persuasive, and it accordingly declines to grant summary judgment on this ground.

### c.      Vitamin A and Iron Nutrient Content Claims

Bumble Bee next argues that Ogden fails to demonstrate that she has standing to pursue claims based on statements regarding the quantities of Vitamin A and Iron found in the Sardines Mediterranean Style product. Mot. at 5, 7. The Court agrees. The sole mention of Vitamin A or Iron on the Sardines Mediterranean Style product's label appears on the nutrition information panel on the back of the package, *see* Bader Decl. Ex. D, which Ogden does not claim to have read in connection with purchasing the product, *see, e.g.*, Ogden Dep. at 109:8-10 ("As I said, prior to this lawsuit, I never really looked at the back of labels."). All other claims regarding the levels of Vitamin A and Iron contained in the Sardines Mediterranean Style product appear to have been made on the www.kingoscar.com website. *See* AC ¶ 48. But Ogden concedes that she did not visit this website prior to purchasing the Sardines Mediterranean Style product. *See* Ogden Dep. at 106:2-7 ("[Q:] Do you recall looking at the King Oscar webpage before buying any King Oscar sardines Mediterranean style? [A:] Before buying them at all? [Q:] Yes. [A:] No."). What is more, nothing in the record supports Ogden's assertion that the www.kingoscar.com website ever made Vitamin A and Iron nutrient content claims at all, as Ogden has failed to submit screenshots or any other evidence of this website's contents. Accordingly, the Court concludes that Ogden has failed to raise a genuine issue of material fact concerning whether she has statutory standing to pursue UCL, FAL, and CLRA claims based on Bumble Bee's purported statements regarding Vitamin A and Iron, and the Court GRANTS Bumble Bee's Motion for Summary Judgment as to these claims.

### d.      Health/Drug Claims

Finally, Bumble Bee contends that Ogden has failed to establish that she has statutory standing to pursue claims related to Bumble Bee's purported "health" or "drug" claims. Mot. at 7.

22

Case No.: 12-CV-01828-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

Again, the Court agrees. The vast majority of the purported health/drug claims appear on the www.kingoscar.com website, AC ¶ 82, which Ogden neither visited nor relied upon prior to purchasing Bumble Bee's products, *see supra* Part III.2.c. Moreover, as noted above, Ogden has not submitted evidence of the content of any claims allegedly made on the www.kingoscar.com website.

As for the one potential health claim made on a product label—namely, the heart symbol appearing on the label of the Solid White Albacore in Water product, *see* Opp'n at 7—Ogden has failed to explain why she believes Bumble Bee's use of the heart symbol on this product was unlawful. Absent evidence and authority to support Ogden's claim that Bumble Bee's use of the heart symbol was unlawful and misleading, the Court concludes that Ogden has not shown the existence of a genuine dispute of material fact over whether she has standing to pursue UCL, FAL, and CLRA claims based on Bumble Bee's use of a heart symbol on the label of the Solid White Albacore in Water product.

### e.       Summary of Standing Findings

As the Court concludes that Ogden has established the existence of genuine issues of material fact regarding whether she has statutory standing to pursue her Omega-3 Nutrient Content and Front-of-Package Disclosure Claims, the Court DENIES Bumble Bee's Motion for Summary Judgment on this ground as to these claims. The Court GRANTS Bumble Bee's Motion for Summary Judgment based on lack of statutory standing with regard to Ogden's Vitamin A and Iron Nutrient Content and Health/Drug Claims.

### B.       "Standing" to Enforce the FDCA and the Sherman Law

Bumble Bee further argues that summary judgment is warranted because Ogden "lacks standing to enforce the FDCA or Sherman Law." Mot. at 7. As Bumble Bee sees it, the fact that neither the FDCA nor the Sherman Law provides for a private right of action precludes Ogden from bringing suit for conduct that violates those statutes. *Id.* at 8. Although this sounds very much

23

United States District Court
For the Northern District of California

1    like an argument that Ogden's claims are impliedly preempted (and although Bumble Bee cites

2    preemption cases in support of its argument, *see id.* (citing *Perez v. Nidek Co.*, 711 F.3d 1109 (9th

3    Cir. 2013)), Bumble Bee insists that it is not making a preemption argument. *See* Reply at 2 n.3.

4    Rather, Bumble Bee states that it is simply "pointing out that the predicate federal and state statutes

5    do not provide private rights of action, and so Ogden cannot assert a UCL unlawful claim based on

6    violations of those laws." *Id.*

7         The Court does not see how Bumble Bee's "no private right of action" argument differs

8    from an implied preemption argument.[12] Labels aside, however, Bumble Bee's argument is

9    unpersuasive. Ogden is not suing under either the FDCA or the Sherman Law; rather, Ogden is

10   suing under the UCL, FAL, and CLRA, all laws that create private rights of action. In particular,

11   the UCL's unlawful prong "borrows violations of other laws," treating "them as unlawful practices

12   that the unfair competition law makes independently actionable." *Cel-Tech Commc'ns, Inc. v. L.A.*

13   *Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999) (internal quotation marks omitted).[13] Although

14   California Courts and the Ninth Circuit have held that a plaintiff may not bring a UCL action when

15   the underlying statute contains "an absolute bar to relief," *id.* at 182 (internal quotation marks

16   omitted); *see also Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042, 1048 (9th Cir. 2000),

17   these courts have simultaneously acknowledged that this exception to the broad coverage of the

18   UCL is "narrow," *Chabner*, 225 F.3d at 1048. Indeed, "[t]o forestall an action under [the UCL],

19   another provision must actually 'bar' the action or clearly permit the conduct." *Cel-Tech*, 20 Cal.

20   4th at 183. This narrow exception to the UCL is not operative here. No provision in either the

21

22   [12] In other food misbranding cases before this Court, the argument that plaintiffs' claims are barred
     because the FDCA does not provide a private right of action have been presented and addressed as

23   an implied preemption argument. *See, e.g.*, *Bruton v. Gerber Prods. Co.*, --- F. Supp. 2d ---, 2013
     WL 4833413, at *8 (N.D. Cal. Sept. 6, 2013); *Brazil v. Dole Food Co.* (*Brazil I*), 935 F. Supp. 2d

24   947, 954 (N.D. Cal. 2013).
     [13] Although Bumble Bee seems to raise the "no private right of action" argument in relation to all

25   of Ogden's state-law claims, the cases Bumble Bee cites to support this argument, if they address
     California state law at all, address only the UCL.

26                                                24

27   Case No.: 12-CV-01828-LHK
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY
28   JUDGMENT

**United States District Court**
For the Northern District of California

1   FDCA or the Sherman Law actually bars Ogden's UCL action or permits Bumble Bee's labeling

2   statements.

3   　　　None of the cases Bumble Bee cites in support of the argument that Ogden may not use

4   California's consumer protection laws to make an "end run" around the FDCA is on point. In

5   *Hartless v. Clorox Co.*, No. 06-2705, 2007 WL 3245260, at *3-4 (S.D. Cal. Nov. 2, 2007), the

6   court dismissed the plaintiff's UCL claim because the Ninth Circuit had previously concluded that

7   the federal statute underlying the claim contained an express prohibition on private enforcement

8   actions. *Id.* As mentioned above, no such express prohibition is present here. *In re Epogen &*

9   *Aranesp Off-Label Marketing & Sales Practices Litigation*, 590 F. Supp. 2d 1282, 1287 (C.D. Cal.

10  2008), involved an attempt to sue under the Racketeer Influenced and Corrupt Organizations Act

11  ("RICO"), 18 U.S.C. §§ 1961-1968, and the UCL for off-label prescription drug marketing. The

12  court in *In re Epogen* did not confront a situation, such as exists here with the Sherman Law, in

13  which the plaintiff's claims arose under a distinct state statute that imposed restrictions on off-label

14  marketing that mirrored federal regulations. The remaining cases, *PhotoMedex, Inc. v. Irwin*, 601

15  F.3d 919, 928 (9th Cir. 2010), and *Sandoz Pharmaceuticals Corp. v. Richardson-Vicks, Inc.*, 902

16  F.2d 222, 230-31 (3d Cir. 1990), both involved efforts to bring Lanham Act, 15 U.S.C. §§ 1051 *et*

17  *seq.*, claims for alleged FDCA violations. This Court has previously found that decisions regarding

18  the interaction between the Lanham Act and the FDCA are not dispositive of whether the FDCA

19  "preclude[s] private enforcement actions of state laws that mirror the FDCA," *Brazil I*, 935 F.

20  Supp. 2d at 957, and it finds such cases similarly unilluminating here. Because Bumble Bee has

21  failed to explain how its "no private right of action" argument differs in any meaningful way from

22  the implied preemption argument that this Court has repeatedly rejected in other food misbranding

23  cases, *see, e.g.*, *Bruton*, 2012 WL 4833413 at *8; *Brazil I*, 935 F. Supp. 2d at 954,[14] and because

24  _____

[14] In any event, were the Court to address Bumble Bee's "no private right of action" argument as

25  an implied preemption argument, the Court would reject it for the reasons stated in *Bruton*, *Brazil*
    *I*, and other food misbranding cases where defendants have raised implied preemption. *See Bruton*,

26  　　　　　　　　　　　　　　　　　　25

27  Case No.: 12-CV-01828-LHK
    ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY
28  JUDGMENT

**United States District Court**
For the Northern District of California

1  the cases Bumble Bee cites in support of its "no private right of action" argument arose in

2  materially different circumstances than those presented by this case, the Court DENIES Bumble

3  Bee's Motion for Summary Judgment on this ground.

4       **C.**    **Restitution**

5       Bumble Bee's next argument is that Ogden is not entitled to restitution. Mot. at 10-11. The

6  UCL, FAL, and CLRA authorize courts to award restitution as "'may be necessary to restore to any

7  person in interest any money or property . . . which may have been acquired by means of [an]

8  unfair or deceptive act.'" *Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal. App. 4th 663, 696 (2006)

9  (quoting Cal. Bus. & Prof. Code §§ 17203, 17535); *see also id.* at 694 & n.22 (standards for

10 awarding restitution are the same in UCL, FAL, and CLRA actions). "The difference between what

11 the plaintiff paid and the value of what the plaintiff received is a proper measure of restitution,"

12 and "to recover under this measure, there must be evidence of the actual value of what the plaintiff

13 received." *In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 131 (2009); *see also In re Facebook,*

14 *Inc., PPC Adver. Litig.*, 282 F.R.D. 446, 461 (N.D. Cal. 2012) ("[W]ith regard to the UCL claim

15 for restitution, plaintiffs must be able to prove, for each class member, the difference between what

16 the plaintiffs paid and the value of what the plaintiffs received."); *In re Google AdWords Litig.*, No.

17 08-3369, 2012 WL 28068, at *15 (N.D. Cal. Jan. 5, 2012) ("Since the purpose of restitution is to

18 return class members to status quo, the amount of restitution due must account for the benefits

19 received . . . ."). Overall, "[t]he amount of restitution awarded under the False Advertising and

20 Unfair Competition Laws and the CRLA must be supported by substantial evidence." *Colgan*, 135

21 Cal. App. 4th at 700.

22      Bumble Bee contends that Ogden has failed to present substantial evidence to support an

23 award of restitution because, in Bumble Bee's view, Ogden has provided insufficient evidence of

24  
25 2012 WL 4833413 at *8; *Brazil I*, 935 F. Supp. 2d at 954; *see also Werdebaugh v. Blue Diamond Growers*, No. 12-2724, 2013 WL 5487236, at *6-8 (N.D. Cal. Oct. 2, 2013); *Gustavson v. Wrigley Sales Co.*, --- F. Supp. 2d ---, 2013 WL 5201190, at *8-10 (N.D. Cal. Sept. 16, 2013).

26
 

27 Case No.: 12-CV-01828-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY
28 JUDGMENT

1 the amount of money she spent on Bumble Bee products throughout the class period. Reply at 8.

2 The Court disagrees. Ogden, in a sworn declaration, estimated that she spent approximately $30

3 per month on the three Bumble Bee products at issue in this case. Ogden Decl. ¶ 3. This is

4 competent evidence, and given that "restitution need not be determined with exact precision," *In re*

5 *Google Adwords*, 2012 WL 28068 at *15, Bumble Bee is incorrect to assert that Ogden provided

6 "no" evidence regarding how much she spent on Bumble Bee products throughout the class period.

7 *Accord Ries v. AriZona Beverages USA LLC*, 287 F.R.D. 523, 532 (N.D. Cal. 2012) (rejecting

8 argument that plaintiffs could not prove entitlement to restitution because the plaintiffs did not

9 provide receipts, even though the plaintiffs' testimony provided estimates of the amounts spent on

10 the defendant's products).

11 Nevertheless, while Ogden may have presented sufficient evidence of the total amount of

12 money she spent on Bumble Bee's products, a claim for restitution requires that Ogden also present

13 evidence of the difference in value between what she spent and what she received. Ogden concedes

14 that she bought Bumble Bee's products for taste and convenience, as well as because of Bumble

15 Bee's allegedly unlawful label statements, *see, e.g.*, Ogden Dep. at 25:16-26:4, which demonstrates

16 that the products had *some* value to Ogden apart from the statements on the products' labels.

17 Accordingly, Ogden must present additional evidence of the value of Bumble Bee's products

18 without the allegedly unlawful label statements in order to obtain restitution. *Accord Ries*, 287

19 F.R.D. at 532 ("Even if the beverages plaintiffs purchased were not all natural, they still had some

20 market value that accrued to plaintiffs. The proper measure of the restitution to which plaintiffs

21 may be entitled must be based in evidence establishing the difference between the value of an

22 AriZona Iced Tea billed as all-natural and the value of a comparable beverage not marketed or sold

23 at a premium due to such claims."). This Ogden fails to do. Ogden has not provided evidence of the

24 price of any comparable products that do not make the allegedly unlawful label statements, nor has

25 she offered any other evidence regarding the size of the price premium she paid for Bumble Bee's

26

27

28

27

United States District Court
For the Northern District of California

product due to the allegedly unlawful label statements. While Ogden points to the Declaration of Dr. Oral Capps, submitted in support of Ogden's Motion for Class Certification, *see* Opp'n at 22 (citing ("Capps Decl.") ECF No. 59-7), Dr. Capps did not estimate the price premium associated with Bumble Bee's label statements. Rather, Dr. Capps merely stated that he *could* provide such an estimate and offered a general description of several methods he might use to do so. Capps Decl. ¶¶ 12-17. Standing alone, this description of methodology is not evidence of the proper amount of restitution in this case. Furthermore, although the Capps Declaration intimates that Dr. Capps intends to calculate the proper amount of restitution at some point in the future, *see id.*, Dr. Capps apparently has yet to do so, and both fact and expert discovery are now closed, *see* ECF No. 79 (setting the fact and expert discovery cut-off at November 30, 2013).[15]

Ogden does not explain her failure to provide any evidence of the actual amount of restitution to which she is entitled, nor does she request further discovery on this issue. *See* Opp'n at 24-25 (requesting additional discovery on certain issues, but not this one). In light of the absence of substantial evidence to support an award of restitution, the Court GRANTS Bumble Bee's Motion for Summary Judgment on this ground.

### D.   Disgorgement

Bumble Bee also moves for summary judgment on Ogden's entitlement to disgorgement. Mot. at 11. The Court agrees that summary judgment is warranted on this ground. Disgorgement under the UCL and FAL[16] must be restitutionary in nature. *See Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1148 (2003). As discussed above, however, Ogden has not provided sufficient evidence as to the appropriate amount of restitution to create a triable issue of

---

[15] Bumble Bee objects to the entire Capps Declaration as an inadmissible expert opinion under Federal Rule of Evidence 702, because Capps "has not performed any analysis to support his conclusions." Reply at 11. The Court need not rule on this objection at this time because it concludes that Dr. Capps's opinion, even if admissible, does not provide sufficient evidence to support Ogden's claim for restitution. Accordingly, the Court DENIES Bumble Bee's evidentiary objection to the Capps Declaration as moot.

[16] Ogden does not seek disgorgement under the CLRA. AC ¶¶ 189, 198-199.

28

material fact over whether Ogden is entitled to any restitutionary remedy. *See supra* Part III.C. The Court therefore GRANTS Bumble Bee's Motion for Summary Judgment on disgorgement.

### E.    Injunctive Relief

Bumble Bee further argues that, even if Ogden has standing to sue generally, Ogden does not have standing to seek injunctive relief, because "Bumble Bee is in the process of revising the allegedly misbranded labels on the Bumble Bee Products." Mot. at 11; *see also* ("Mavity Decl.") ECF No. 75-3 ¶ 5 ("Bumble Bee is in the process of correcting the labels on the Tuna Salad with Crackers, Solid Albacore Tuna in Water and King Oscar Sardines Mediterranean Style products (and all other products with Omega 3 claims) to state the specific types of Omega-3 fatty acids and to provide a disclosure on the front of the packages regarding fat (for the Tuna Salad) and cholesterol (for the Sardines Mediterranean Style)."). Bumble Bee observes that a plaintiff may only seek injunctive relief when there is a "'probability of future violations.'" Reply at 7 (quoting *Matthews v. Gov't Emps. Ins. Co.*, 23 F. Supp. 2d 1160, 1165 (S.D. Cal. 1998)). Bumble Bee asserts that there is no probability of future violations here because of Bumble Bee's pending label changes. *Id.*

Bumble Bee's argument fails. In spite of Bumble Bee's attestation that it is in the process of changing its labels, Bumble Bee has not produced any evidence of when the change will take place or what precisely the new labels will say. Without such evidence, the Court cannot conclude either that Bumble Bee *will* change its labels in the future or that any new labels will necessarily comply with federal and California law.[17] Accordingly, Bumble Bee has not shown that there is no genuine

---

[17] The cases Bumble Bee relies on in support of its argument that Ogden may not seek an injunction are inapposite. *See* Mot. at 11; Reply at 7. Unlike the present scenario, where Bumble Bee has merely stated its intent to change its labels in the future, the cases on which Bumble Bee relies all involved allegedly illegal practices that had already ceased by the time the court ruled that the plaintiffs could no longer seek injunctive relief. *See, e.g.*, *Weiner v. Snapple Beverage Corp.*, No. 07-8742, 2011 WL 196930, at *2 (S.D.N.Y. Jan. 21, 2011); *Matthews*, 23 F. Supp. 2d at 1165 *Pfizer Inc. v. Superior Court*, 182 Cal. App. 4th 622, 631 n.5 (2010).

Case No.: 12-CV-01828-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

issue of material fact concerning the availability of injunctive relief in this case, and the Court therefore DENIES Bumble Bee's Motion for Summary Judgment on this ground.

### F.    Song-Beverly and Magnuson-Moss Warranty Act Claims

Bumble Bee contends that Ogden's claims under the Song-Beverly Consumer Warranty Act, Cal. Civ. Code §§ 1790 *et seq.*, and the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301 *et seq.*, fail as a matter of law. Mot. at 8-9. In response, Ogden states that although she "can establish a breach of warranty claim" under these statutes, Ogden nevertheless "does not oppose the dismissal of these claims," because "the relief sought therein is covered" by Ogden's other claims. Opp'n at 24.

While Ogden has withdrawn her warranty act claims, the Court notes that these claims are also foreclosed as a matter of law. The Song-Beverly Consumer Warranty Act specifically excludes "consumables" from its coverage. Cal. Civ. Code §§ 1792 (stating that the Song-Beverly Act applies to sales of "consumer goods"); 1791(a) (defining "consumer goods" as "any new product or part thereof that is used, bought, or leased for use primarily for personal, family, or household purposes, *except for* clothing and *consumables*" (emphasis added)). Since canned tuna and sardines are indisputably "consumables," Ogden's claims necessarily fall outside the purview of the Song-Beverly Act. *Accord Bruton*, 2013 WL 4833413 at *22 (dismissing similar Song-Beverly Act claims on the ground that the Act does not apply to food); *Brazil I*, 935 F. Supp. 2d at 965 (same).

Ogden's Magnuson-Moss Warranty Act claim also fails. The Magnuson-Moss Act applies only to products that cost more than five dollars, 15 U.S.C. § 2302(e), and consumers may sue for violations of the Act only when the number of named plaintiffs in this action exceeds one hundred, 15 U.S.C. § 2310(d)(3)(C). Ogden has not produced evidence that she paid more than five dollars for any Bumble Bee product she purchased, and she is the only named plaintiff in this suit. What is more, this Court and other courts in this district have repeatedly held that claims made on a food

30

**United States District Court**
For the Northern District of California

1   product's label are not "warranties" within the meaning of the Magnuson-Moss Act and thus

2   cannot serve as the basis for a Magnuson-Moss Act claim. *See, e.g., Bruton*, 2013 WL 4833413 at

3   *21-22; *Brazil I*, 935 F. Supp. 2d at 965-66; *Larsen v. Trader Joe's Co.*, No. 11-5188, 2012 WL

4   5458396, at *3 (N.D. Cal. June 14, 2012); *Littlehale v. Hain Celestial Grp., Inc.*, No. 11-6342,

5   2012 WL 5458400, at *1 (N.D. Cal. July 2, 2012). Because Ogden's Song-Beverly and Magnuson-

6   Moss Act claims fail as a matter of law, the Court GRANTS Bumble Bee's Motion for Summary

7   Judgment as to these claims.[18]

8         **G.**    **Unjust Enrichment**

9         Bumble Bee finally argues that Ogden's claim for restitution based on "Unjust

10  Enrichment/Quasi Contract" must be dismissed because California does not recognize "unjust

11  enrichment" as a separate cause of action. Mot. at 10-11. The Court agrees.

12        Despite some inconsistency in the law, several recent decisions by the California Court of

13  Appeals have held that "[u]njust enrichment is not a cause of action, just a restitution claim." *Hill*

14  *v. Roll Int'l Corp.*, 195 Cal. App. 4th 1295, 1307 (2011); *accord Levine v. Blue Shield of Cal.*, 189

15  Cal. App. 4th 1117, 1138 (2010); *Durell*, 183 Cal. App. 4th at 1370. In light of this recent

16  authority, this Court has previously determined that there is no separate cause of action for unjust

17  enrichment under California law. *See, e.g., Brazil I*, 935 F. Supp. 2d at 966; *Low v. LinkedIn Corp.*,

18  900 F. Supp. 2d 1010, 1031 (N.D. Cal. 2012). Other federal courts have similarly determined that

19  there is no independent cause of action for unjust enrichment. *See, e.g., LaCourt v. Specific Media,*

20  *Inc.*, No. 10-1256, 2011 WL 1661532, at *8 (C.D. Cal. 2011); *Robinson v. HSBC Bank USA*, 732

21  F. Supp. 2d 976, 987 (N.D. Cal. 2010). Accordingly, the Court thus GRANTS Bumble Bee's

22  Motion for Summary Judgment as it relates to Ogden's Unjust Enrichment/Quasi Contract claim.

23

24

---

25  [18] Although the Court has now disposed of Ogden's sole federal claim, the Court finds that it retains jurisdiction under to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2).

26

27  Case No.: 12-CV-01828-LHK
    ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY

28  JUDGMENT

## IV.   EVIDENTIARY OBJECTIONS

The parties raise several evidentiary objections not previously addressed in this Order. Ogden objects to Exhibits A, B, and C to the Mavity Declaration, which are test results purporting to show the level of Omega-3s present in the Tuna Salad with Crackers, Solid White Albacore in Water, and Sardines Mediterranean Style products, Mavity Decl. ¶¶ 6-7, on the grounds that these Exhibits lack sufficient authentication, contain inadmissible hearsay, and are unsupported expert opinions. *See* ECF No. 82 at 1-2. Bumble Bee moves to strike Ogden's objection because it was filed in a separate document from Ogden's Opposition, in violation of Civil Local Rule 7-3(a). Reply at 12; *see also* Civ. Loc. R. 7-3(a) ("Any evidentiary and procedural objections to the motion must be contained within the brief or memorandum."). In the alternative, Bumble Bee offers additional evidence to authenticate the Exhibits and to establish that the Exhibits fall within the business records exception to the hearsay rule and are not expert opinions. Reply at 12-13. Ogden objects to this additional evidence. ECF No. 88.

Bumble Bee, for its part, objects to the Declarations of Edward Scarborough and Julie Caswell, as well as to Dr. Capps's Rebuttal to the Expert Report of Dr. Jerry Wind. Reply at 10-12. Bumble Bee asserts that the Scarborough and Caswell Declarations and the Capps Rebuttal all fail to meet the standards for admissible expert opinions set forth in Federal Rule of Evidence 702. *Id.* Because Bumble Bee's objections first appeared in its Reply in Support of Summary Judgment, Ogden has not had an opportunity to respond.

The Court finds that these evidentiary objections are moot, because the Court did not rely on any of this evidence in ruling on the Motion for Summary Judgment. Accordingly, Ogden's objections to Exhibits A, B, and C to the Mavity Declaration, and Bumble Bee's objections to the Scarborough and Caswell Declarations and the Capps Rebuttal are hereby DENIED as moot. Bumble Bee's Motion to Strike Ogden's evidentiary objection for failure to comply with Civil Local Rule 7-3(a) is also DENIED as moot.

32

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

**V.      RULE 56(d) REQUEST**

Pursuant to Federal Rule of Civil Procedure 56(d), Ogden requests that the Court grant additional discovery "to the extent 1) the Court deems the purported lab results [Exhibits A, B, and C to the Mavity Declaration] admissible to support Bumble Bee's motion; and 2) that the Court considers any part of Bumble Bee's motion well-taken and worthy of being sustained." Opp'n at 25. Ogden states that such additional discovery would relate to the Bumble Bee "lab results" and to the persons involved in creating those results. *See id.* As the Court did not rely on Exhibits A, B, and C to the Mavity Declaration in ruling on Bumble Bee's Motion for Summary Judgment, *see supra* Part IV, Ogden's request for additional discovery related to these lab results is DENIED as moot.

**VI.     CONCLUSION**

For the foregoing reasons, the Court:

1.  GRANTS in part and DENIES in part Bumble Bee's Motion for Summary Judgment on whether Ogden has statutory standing to pursue her UCL, FAL, and CLRA claims;

2.  DENIES Bumble Bee's Motion for Summary Judgment on whether Ogden "lacks standing to enforce the FDCA or Sherman Law";

3.  GRANTS Bumble Bee's Motion for Summary Judgment on whether Ogden is entitled to the remedy of restitution;

4.  GRANTS Bumble Bee's Motion for Summary Judgment on whether Ogden is entitled to the remedy of disgorgement;

5.  DENIES Bumble Bee's Motion for Summary Judgment on whether Ogden is entitled to injunctive relief;

6.  GRANTS Bumble Bee's Motion for Summary Judgment on Ogden's Song-Beverly Consumer Warranty Act and Magnuson-Moss Warranty Act claims;

Case No.: 12-CV-01828-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

7. GRANTS Bumble Bee's Motion for Summary Judgment on Ogden's claim for restitution based on "Unjust Enrichment/Quasi Contract";

8. DENIES Bumble Bee's evidentiary objection to the Ogden Declaration;

9. GRANTS Bumble Bee's Request for Judicial Notice;

10. DENIES as moot the parties remaining evidentiary objections, as well as Bumble Bee's Motion to Strike to Ogden's objection to Exhibits A, B, and C to the Mavity Declaration; and

11. DENIES as moot Ogden's Rule 56(d) request for additional discovery related to Exhibits A, B, and C to the Mavity Declaration.

**IT IS SO ORDERED.**

Dated: January 2, 2014

_____
LUCY H. KOH
United States District Judge

34

United States District Court
For the Northern District of California